Steven J. HOSKOVEK, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 5456.

Supreme Court of Wyoming.

June 26, 1981.

Gerald M. Gallivan, Director, Wyo. Defender Aid Program, argued, and Michael B. Rosenthal, Student Intern, Wyo. Defender Aid Program, Laramie, on brief, for appellant.

Allen C. Johnson, Sr. Asst. Atty. Gen., argued, Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Cheyenne, on brief, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROONEY, Justice.

In this appeal, appellant-defendant contends that he was denied effective assistance of counsel in a criminal proceeding in which he was found guilty by a jury of the crime of aggravated robbery. Specifically, appellant contends that the public defender, who represented him at the trial, did not adequately investigate and prepare a "crucial" and "sole" defense premised upon appellant's lack of mental competence, capacity and legal sanity.

Inasmuch as we do not find factual support for the contention in the record, we affirm.

 A criminal defendant is entitled to an "effective" assistance of counsel. *Gideon v. Wainright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell v. State of Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The standard which we have established to determine whether or not the assistance of counsel is effective is one of "reasonableness." Is the assistance rendered by counsel that which would reasonably be rendered by a reasonably competent attorney under the facts and circumstances of the case? If it is, it is effective. If it is not, it is ineffective. *Galbraith v. State*, Wyo., 503 P.2d 1192 (1972); *Ash v. State*, Wyo., 555 P.2d 221 (1977); *Johnson v. State*, Wyo., 562 P.2d 1294 (1977); *Adger v. State*, Wyo., 584 P.2d 1056 (1978). The burden rests upon appellant to establish the ineffectiveness of counsel's assistance inasmuch as there is a presumption that counsel is competent and that he performed his duty. *Johnson v. State*, supra; *Galbraith v. State*, supra.

Appellant has not carried this burden and has not established the ineffective assistance of counsel under the aforesaid standard.

It was not until the sentencing procedure on December 2, 1980 that there was any indication in the record relative to the possible existence of a mental problem or disorder on the part of appellant. At that time, appellant's father testified to unusual behavior by appellant about a week before the robbery and to similar behavior subsequent to the robbery after he was released on bail. During the latter period, appellant was hospitalized at Porter Hospital in Denver by his parents for treatment of "active hallucinations." Later, he underwent a diagnostic evaluation at the Jefferson County Diagnostic Unit in Golden, Colorado. The diagnostic impression was "schizoid personality disorder, with paranoid features."

The record does not reflect whether or not appellant's trial counsel was aware of these things. It does not reflect whether or not these things were deliberately concealed from such trial counsel by appellant and/or by his family, or whether or not such trial counsel made inquiry concerning them. The record does not reflect the extent, if any, that these things were discussed by appellant with his trial counsel, and, if they were discussed, whether or not appellant refused to allow a defense based thereon.[1] It does not reflect whether or not appellant and his trial counsel decided that if a defense based on such things were presented it would have the potential to weaken the defense which was presented,[2] and that it was decided that the better course was to

---

1. The record reflects that appellant holds "some hostile feelings toward his father because his father placed him at Porter Hospital in Denver."

2. The defense presented was a contention that appellant did not participate directly in the robbery and did not realize that it was taking place. Appellant so testified, but the jury found otherwise. There was evidence that appellant and Thomas Rush went to a service

proceed only with the defense presented. The record does not reflect whether or not these things would be sufficient to support legal defenses based on lack of capacity as a result of mental illness or deficiency.

In short, the record does not reflect that the assistance rendered by appellant's trial counsel was other than that which would reasonably be rendered by a reasonably competent attorney under the facts and circumstances of this case. Appellant has not carried his burden to establish an ineffective assistance of counsel.

At page 1196 of *Galbraith v. State*, 503 P.2d, we quoted the following from *United States v. Rubin*, 433 F.2d 442, 444 (5th Cir. 1970), cert. denied 401 U.S. 945, 91 S.Ct. 961, 28 L.Ed.2d 228:

" 'Taking a hindsight view, many convicted defendants may condemn their counsel as ineffective. But the command of the constitution is for a battle, not a victory, as Judge Goldberg pointed out for us in *Odom v. United States*, 5 Cir., 1967, 377

F.2d 853, 859. The standard was articulated by Judge Wisdom in *MacKenna v. Ellis*, 5 Cir., 1960, 280 F.2d 592, 599: "We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." We have never deviated from these principles. * * *' "

If it be improper to make a determination as to competency on the basis of hindsight, it would be more than improper to do so on the basis of that which cannot be ascertained even with hindsight, i. e. a record devoid of facts necessary for the decision.

Affirmed.

station in Casper. Rush entered the station, kept one hand in his pocket, asked the only attendant if he had ever been shot, and demanded and received money from the attendant. The attendant observed appellant as accompanying Rush, but staying just outside the door of the station where he displayed a large knife. Appellant testified that he habitually used the knife to scratch his beard and was doing so at the time. After the police completed their investigation at the station subsequent to the robbery and left, appellant was seen driving an automobile from the area. When stopped by the police, money taken from the station was on the front seat of the automobile, and Rush was concealed in the back seat. Immediately after his arrest, appellant gave a written statement to the police in which he said that Rush had told him he was going to "barge" the station and that "barge" meant "rob." He said in the statement that he thought Rush was joking about the robbery until after it was accomplished.