STATE of Wyoming ex rel. Mark A.
HOPKINSON, Petitioner,

v.

The DISTRICT COURT, TETON COUN-
TY, Wyoming, Ninth Judicial
District, Respondent.

Mark A. HOPKINSON,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

STATE of Wyoming ex rel. Mark A.
HOPKINSON, Petitioner,

v.

The DISTRICT COURT, TETON COUN-
TY, Wyoming, Ninth Judicial
District, Respondent.

Mark A. HOPKINSON,
Appellant (Petitioner),

v.

A.G. McCLINTOCK, Wyoming Attorney
General, and Duane Shillinger, Ward-
en, Wyoming State Penitentiary, Appel-
lees (Respondents).

Nos. 84–144, 84–151, 84–193 and 84–212.

Supreme Court of Wyoming.

Feb. 28, 1985.

Motion for Further Oral Argument and
Rehearing Denied April 19, 1985.

56

Leonard Munker, State Public Defender, Martin McClain, Appellate Counsel, State Public Defender, and David S. Vogel, Seattle, Wash., for appellant (petitioner).

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Allen C. Johnson, Sr. Asst. Atty. Gen., for appellees (respondents).

Before THOMAS\*, C.J., ROSE and CARDINE, JJ., RAPER, J., Retired, and McEWAN, District Judge.

RAPER, Justice, Retired.

This is the fourth time the appellant/petitioner has been before this Court seeking to vacate his conviction and death sentence. For future reference, this consolidation and disposition of original proceedings and appeals is *Hopkinson IV.* See *Hopkinson v. State,* Wyo., 632 P.2d 79 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982) [*Hopkinson I*]; *Hop-*

kinson v. State, Wyo., 664 P.2d 43, cert. denied — U.S. ——, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983) [*Hopkinson II*]; *Hopkinson v. State,* Wyo., 679 P.2d 1008, cert. denied — U.S. ——, 105 S.Ct. 228, 83 L.Ed.2d 157 (1984) [*Hopkinson III*]. Briefly, the facts are that appellant was found guilty of four murders and, as a result of the presence of statutory aggravating circumstances and upon recommendation of a jury, sentenced to death for the murder of Jeff Green. The details of the horrifying and inexcusable deaths and appellant's guilt and culpability justifying the death penalty can be found in *Hopkinson I and II,* particularly. *Hopkinson III* affirmed the trial judge's denial of a new trial and in doing so contained many facts with supporting references to the record.

As we view the record and filings in these proceedings and appeals, the only issue is whether appellant's Consolidated Petition for Post-Conviction Relief and Writ of Habeas Corpus, filed in the district court of the county of trial and dismissed by the trial judge upon a motion to dismiss,[1] is sufficient to state a claim.[2] We will not reach the issue raised in the appeal of appellant from an order of the trial judge denying his sweeping motion for "preparation of all of the Grand Jury evidence and testimony touching on any aspect of his case [*State v. Hopkinson*]." The trial judge entered an order requiring appellant to state with particularity what it was he was asking for. Appellant filed a response to the trial court's order which, while itemized, would appear to demand all grand jury proceedings relating to appellant. The district judge then denied it on the ground that the request had to do with the substantive issues tried in the two previous jury trials and motion for new trial considered in *Hopkinson I, II and III,* respectively; and that no showing was made that

\* Became Chief Justice January 1, 1985.

1. The State's Motion to Dismiss was of the speaking variety, replete with reasoning and citation of authority.

2. Appellant not only appeals the dismissal, but also has filed an original proceeding seeking

leave to file a petition for writ of prohibition/mandamus for an order from this Court vacating the dismissal and requesting that all matters relating to petitioner be assigned to a judge other than Judge Ranck.

these issues should be opened for a fourth consideration of the case.[3]

We consolidated the appeals and original proceedings before this Court for argument, hearing, and disposition. At the same time, a peremptory writ of prohibition was issued staying execution of appellant's death sentence, subject to later rescheduling if the outcome of the appeals and original proceedings before this Court should be unfavorable to appellant.

We will affirm the orders of the district court denying post-conviction relief and discovery of all grand jury proceedings, deny leave to file petitions for writs of prohibition and mandamus, and direct the trial judge, by appropriate proceedings, to set a new date to carry out the death sentence.

I

Writs of habeas corpus are governed by §§ 1–27–101 through 1–27–134, W.S. The Wyoming Constitution makes little reference to the writ other than recognizing it as a constitutional right and that "[t]he privilege of the writ of habeas corpus shall not be suspended unless, when in case of rebellion or invasion the public safety may require it." Article 1, § 17, Wyoming Constitution. The Wyoming Supreme Court is granted original jurisdiction in habeas corpus, Art. 5, § 3, Wyoming Constitution, as are district courts, Art. 5, § 10, Wyoming Constitution. Habeas corpus may be regulated by statute, provided such regulations do not infringe upon the constitutional right of the writ. *Miskimins v. Shaver*, 8 Wyo. 392, 404, 58 P. 411 (1899). There is no appeal from denial by a district court of a writ of habeas corpus, but that does not prevent petitioning the Supreme Court by original proceedings for issuance of the writ. *State ex rel. Klopotek v. District Court of Sheridan County,*

Wyo., 621 P.2d 223 (1980); *Foster v. Warden of Wyoming State Penitentiary*, Wyo., 489 P.2d 1166 (1971); *Ex parte Brugneaux,* 51 Wyo. 103, 63 P.2d 800 (1937); *Miskimins v. Shaver,* supra.

Appellant agrees that he could have filed a petition for a writ of habeas corpus pursuant to § 1–27–104, W.S., with the District Court for Carbon County, Second Judicial District, where he is incarcerated in the Wyoming State Penitentiary. However, he elected to consolidate the petition for habeas corpus with a petition for post-conviction relief and file in the district court for the county of trial. The latter procedure for post-conviction relief is provided by §§ 7–14–101 through 7–14–108, W.S. He explained in his petition that the consolidation and filing were made in the Ninth Judicial District "in order to facilitate the proceedings and promote judicial economy." That is a basic foundation for the modern procedure of filing a petition for post-conviction relief in the county of trial, conviction, and sentencing as set out in § 7–14–101, W.S.:

"Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the constitution of the United States or of the state of Wyoming, or both, may institute proceedings under this act [§§ 7–14–101 through 7–14–108]. The proceeding shall be commenced by filing with the clerk of the court in which the conviction took place a petition *verified* by affidavit * * *." (Emphasis added.)

It is generally understood that the type post-conviction statute such as that employed in Wyoming, which is analogous to 28 U.S.C. § 2255 (1982), is now considered in view of the historical context in which it was adopted as simply providing in the

**3.** Appellant not only appeals the trial court's order, but also filed a motion for leave to file a petition for a writ of mandamus directing the district judge to expunge his order denying carte blanche access to grand jury proceedings and that the motion be transferred for disposition to the district judge in whose district the grand jury sat. Appellant was tried in the Ninth Judi-

cial District by a judge of that district on a change of venue. The grand jury which returned the indictment upon which he was tried sat in the Third Judicial District, having been called by a judge of that district. The Third and Ninth Districts geographically adjoin each other in western Wyoming.

sentencing court a remedy commensurate, to a large extent, with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined. See *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); and *Hill v. United States*, 368 U.S. 424, 427, 82 S.Ct. 468, 471, 7 L.Ed.2d 417, reh. denied 369 U.S. 808, 82 S.Ct. 640, 7 L.Ed.2d 556 (1962), as to § 2255 and principles applicable to the Wyoming version. The post-conviction relief statutes, both Wyoming and federal, do not suspend the right of habeas corpus by impinging upon prisoners' rights to collaterally attack their convictions. Rather, the principal purpose was to minimize the administrative difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum. *United States v. Hayman*, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952) [4]; *Dionne v. State*, 93 Idaho 235, 459 P.2d 1017 (1969). These concepts, as far as the case now before us is concerned, apply to Wyoming's post-conviction relief statute.

The record of the conviction is present in the county of trial, and usually the matter can be heard by the district judge who presided over the trial, has an intimate connection to and knowledge of the files and record, and is less likely to be misled by false or misleading allegations as to what occurred. He is thus in a better position to consider the petition on an accessibility and knowledgeable basis than the district judge of the district wherein is located the penitentiary where petitioner is confined, when a stranger to the trial proceedings.[5]

Appellant indicates he must pursue these proceedings before he can access any federal court remedy by way of habeas corpus. 28 U.S.C. § 2254 (1982) provides that an application for habeas corpus cannot be granted unless the applicant has exhausted remedies available in the courts of the state. A reason put forth for creating a state post-conviction remedy is to cut down the number of federal habeas corpus proceedings.[6] The rationale is apparently that if a more complete means of collateral attack on a judgment and sentence is furnished at the state level, federal courts will be more confident with the reliability of, and less likely to review, state court convictions. Comity between the jurisdictions is thus promoted. There has been complaint made in various state government circles that federal courts have usurped and interfered with the state judicial function. It has been held that a ground for entertaining a petition for habeas corpus seeking relief from a state conviction in the federal court establishment is the absence of an effective state corrective process and that this may be a denial of due process under the Fourth Amendment. *Case v. Nebraska*, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d

---

**4.** This case contains a wealth of history and background showing need for a post-conviction relief remedy such as § 2255. The following is illustrative and applicable to the Wyoming judicial system, as well:

"* * * In addition to the problems raised by a large volume of applications for habeas corpus that are repetitious and patently frivolous, serious administrative problems developed in the consideration of applications which appear meritorious on their face. Often, such applications are found to be wholly lacking in merit when compared with the records of the sentencing court. But, since a habeas corpus action must be brought in the district of confinement, those records are not readily available to the habeas corpus court." 72 S.Ct. at 269 (footnotes omitted).

**5.** Section 1–27–104, W.S., provides that a petition for writ of habeas corpus shall be made to the judge most convenient in point of distance to the applicant; a sufficient reason must be stated to do otherwise. Post-conviction proceedings provided by § 7–14–101, et seq., W.S., in the court of conviction relieve the Carbon County District Court, Second Judicial District, at Rawlins, of a heavy burden of handling habeas corpus proceedings related to convictions throughout the state.

**6.** This reason is set out in Commissioners' Prefatory Note to the Uniform Post-Conviction Procedure Act, 11 U.L.A. 479 (1974). Wyoming has not adopted the Uniform Act, but the Wyoming procedure is adequate for a post-conviction examination of appellant's claims, all of which charge constitutional error.

422 (1965).[7] We acknowledge our obligation, and always have, that "[s]tate courts are 'equally bound to guard and protect rights secured by the [United States] Constitution.'" *Duckworth v. Serrano,* 454 U.S. 1, 3–4, 102 S.Ct. 18, 19–20, 70 L.Ed.2d 1 (1981). Exhaustion is a federal question we need not decide. We will afford appellant the opportunity to meaningfully pursue the courses available under Wyoming jurisprudence, and we will give it our best attention even though appellant may be mistaken about his right to relief.

There are reasons why appellant's petition for writ of habeas corpus is not a proper proceeding to obtain the relief he seeks. The proceeding as filed fails to satisfy statutory requirements and court precedent established over many years of Wyoming judicial interpretation. Statutory regulation and case law so narrow habeas corpus in operation that it cannot embrace the latitude of a petition for post-conviction relief. For example, § 1–27–125, W.S.,[8] provides that habeas corpus cannot question the correctness of a verdict of a jury or finding of a judge when they are acting within their jurisdiction in a lawful manner. A court's judgment cannot be impeached by a writ of habeas corpus except for jurisdictional reasons. *Hollibaugh and Bun-*

*ten v. Hehn,* 13 Wyo. 269, 79 P. 1044 (1905). This is the office of an appeal here thrice taken and decided against appellant. Furthermore, there is no provision that we can see which authorizes a court in habeas corpus to grant a new trial, which appears to be what the appellant is really seeking. The court in a post-conviction proceeding can grant a "retrial." Section 7–14–106, W.S. We see no need to further explore the nuances of habeas corpus when the district court had before it a petition for post-conviction relief which raised any question now before us that could be considered in a habeas corpus proceeding, and it was decisively, as the court in which the conviction took place, an eminently proper court to consider the petition for post-conviction relief. This position is particularly applicable here where we have no original petition for writ of habeas corpus before us; no appeal lies from denial of such a petition by the district court; and an appeal from denial of a post-conviction petition for relief is specifically authorized by § 7–14–107, W.S.[9] We, therefore, are going to treat the Consolidated Petition for Post-Conviction Relief and Writ of Habeas Corpus as a petition for post-conviction relief filed as authorized by § 7–14–101, et seq., W.S.[10]

---

**7.** In *Brown v. Allen,* 344 U.S. 443, 447, 73 S.Ct. 397, 402, 97 L.Ed. 469 (1953), it was held that the exhaustion doctrine does not foreclose federal habeas relief whenever a state remedy is available; once a prisoner has presented his claim to the highest state court on direct appeal and certiorari has been denied by the United States Supreme Court, he need not seek collateral relief from the state. We see no need for the appellant to collaterally attack his conviction on the same grounds as disposed of by direct appeal before he can seek federal relief, if that is his purpose in filings which are repetitious in content.

**8.** Section 1–27–125, W.S.:

"Habeas corpus is not permissible to question the correctness of the action of a grand jury in finding a bill of indictment, or a petit jury in the trial of a cause nor of a court or judge when acting within their jurisdiction and in a lawful manner."

**9.** Even if an original petition for writ of habeas corpus were on file here, the posture would be

similar to that in *Albert v. Meacham,* Wyo., 458 P.2d 728 (1969), where, while an appeal from a post-conviction relief proceeding was pending, the appellant filed a separate petition for a writ of habeas corpus. The appellant there made it clear that the reason for pursuing habeas corpus was to exhaust his state remedies. The Court held habeas corpus unnecessary because appellant could urge any points he had in the post-conviction appeal. Appellant in the case now before us has stated that he, likewise, is trying to exhaust all of his state remedies before taking the federal route. Even though that may be his purpose, we have no intention of brushing off the appeal without a close examination into the merits.

**10.** We note that the federal courts follow this same practice. A petition for writ of habeas corpus filed in the sentencing United States district court is treated as a § 2255 motion. *Hilderbrand v. Taylor,* 327 F.2d 205 (10th Cir.1964); *Ray v. United States,* 295 F.2d 416 (10th Cir. 1961), cert. denied 369 U.S. 875, 82 S.Ct. 1146, 8 L.Ed.2d 278 (1962).

## II

Of express application in the disposition of this appeal, as well as the dismissal of appellant's petition for post-conviction relief by the trial judge, is § 7–14–102, W.S.:

"The petition shall identify the proceeding in which the petitioner was convicted, give the date of the rendition of the final judgment complained of, and shall clearly set forth the respects in which petitioner's constitutional rights were violated. *The petition shall have attached thereto affidavits, records, or other evidence supporting the allegations* or shall state why the same are not attached. The petition shall identify any previous proceedings that the petitioner may have taken to secure relief from his conviction. Argument, citations, and discussion of authorities shall be omitted from the petition." (Emphasis added.)

This Court has had this case before it on three previous occasions and in each instance questions were decided which we now see being presented again, some of which have been decided twice before. Once a matter is judicially decided, it is finally decided unless adequate reason is demonstrated to justify reopening and consideration anew.

■ We have no argument with appellant's point that a previous decision must have reliability, but unreliability must be shown in some way other than in terms of mere conclusion. Before a person is entitled to an evidentiary hearing on a petition for post-conviction relief, there must be set forth in the text of the petition and the required supporting attachments a substantial claim plus some specificity in support of the claim. *Boggs v. State*, Wyo., 484 P.2d 711 (1971). In order to justify a hearing, there must be more than a naked statement of a conclusion unsupported by an evidentiary basis. *Cook v. State*, 220 Kan. 223, 552 P.2d 985 (1976); *State v. Gillihan*, 85 N.M. 514, 514 P.2d 33 (1973). There must not only be verified factual allegations in the petition, § 7–14–101, but the statutory requirement is that they must be supported, likewise with some specificity,

§ 7–14–102. Appellant's petition lacks specific explanation and is framed in only bald conclusions without reference to any evidentiary support.

■ The appellant has some notion that the filing of a petition for post-conviction relief is comparable to filing a complaint in a civil action and notice pleading is sufficient; that the contents must be taken as true; and that, in itself, is sufficient to create entitlement to a hearing. That is not the law. The petition must have as required by § 7–14–102 supporting documents attached. Rule 81, W.R.C.P., provides the common-sense principle that in "special statutory proceedings any rule shall not apply insofar as it is clearly inapplicable." Though we cite W.R.C.P. for the rudiment it embraces, a petition for post-conviction relief is not a civil action as contended by appellant. It is a petition authorized to be filed in connection with a criminal matter. It has no characteristics which identify it as a civil case. Under the Wyoming post-conviction statute, no provision is made for naming a respondent to the proceeding. Section 7–14–102 only provides that the petition identify the proceeding, and § 7–14–101 provides that a copy be mailed to the Attorney General who answers for the State, § 7–14–105, W.S. The appellant has not named the State as respondent but instead sues the Attorney General and warden of the penitentiary. In civil actions, there is no provision that we know of for the appointment of an attorney to represent the plaintiff or petitioner. Section 7–14–104, W.S., provides for appointment of an attorney to represent a poor person seeking post-conviction relief. Criminals are ordinarily provided counsel in criminal court proceedings involving them. There is no provision for the payment of a filing fee. In civil actions, a filing fee must be paid. We are thus led to the logical conclusion that a petition for post-conviction relief is a continuation of the criminal case and not a civil action, and we so hold. It should be docketed and filed

in the criminal case to which it refers though that was not done here.[11]

The evolution taking place after many years of experience with 28 U.S.C. § 2255 prompted the adoption of Rules Governing Proceedings in the United States District Courts under Section 2255 of Title 28, United States Code. They were put together as a result of conflicts between the circuits and pronouncements from the United States Supreme Court in an effort to clarify and make uniform the practice with respect to § 2255. Rule 12 of the Rules Governing Section 2255 Proceedings, supra, provides that the district court "may apply the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure, whichever it deems most appropriate." This provision, according to the Advisory Committee Notes to Rule 12, 3A Wright, Federal Practice and Procedure: Criminal 2d, p. 609 (1982), is because of the nature of a § 2255 motion as a continuing part of the criminal proceeding. We construe the Wyoming post-conviction statute in the same fashion. It is not appropriate to apply the Wyoming Rules of Civil Procedure to the extent urged by appellant. We see no significance in the fact that under the federal law the remedy is sought with a motion rather than a petition.[12]

### III

While the appellant makes bald conclusions of fact in the body of the petition, the only support is an affidavit by appellant's counsel "[u]pon information and belief," which affidavit contains no additional or fleshing-out facts. An investigator makes a similar affidavit containing no explanatory facts but only referring to statements in the petition for post-conviction relief as true on "information and belief."

The language of the statutory provisions of the Wyoming post-conviction statute requires that the proceeding be initiated by "a petition verified by affidavit." Section 7–14–101, W.S. The petition "shall have attached thereto affidavits, records, or other evidence supporting the allegations." Section 7–14–102, W.S. These provisions give no flexibility allowing for an affidavit founded on "information and belief." In *Blyth & Fargo Co. v. Swensen*, 7 Wyo. 303, 307–308, 51 P. 873 (1898), appears a definition of an affidavit: " 'An affidavit is a written statement in the name of a person called the affiant or deponent, by whom it is voluntarily signed and sworn to or affirmed before an officer authorized to administer an oath.' " In *Fugate v. Mayor and City Council of Town of Buffalo*, Wyo., 348 P.2d 76 (1959), it is said that an affidavit implies that the person

---

**11.** We note that the district court clerk identified and docketed this as a civil action. We can understand the clerk doing that in this case because the petition was labeled "Consolidated Petition for Post-Conviction Relief and Writ of Habeas Corpus." A habeas corpus petition is filed as a civil action. The clerk was unaware of the difference, as are others. Our examination of other Wyoming cases discloses that petitions for post-conviction relief have been filed in the criminal actions to which they pertain, with the exception of *Munoz v. Maschner, infra.* Maschner was the warden of the penitentiary and it was a pro se filing. Substance, not form, governs. There is no direction in the statute as to how the proceeding shall be docketed or titled. Section 7–14–107, W.S., states that appeals shall be as prescribed in the rules of civil procedure, but criminal appeals have been in accordance with civil procedure. See Rule 38, W.R.Cr.P., Wyo.Rep. 442–445 P.2d LV, before abrogated by Rule 27, W.R.A.P. It makes no difference how it is captioned or in which filing

slot it is placed in the clerk's office; it is an adjunct to the criminal proceeding to which it refers.

**12.** Even habeas corpus is not the civil action many have thought it was. In *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281, reh. denied 394 U.S. 1025, 89 S.Ct. 1623, 23 L.Ed.2d 50 (1969), the Court observed that while habeas corpus proceedings have been characterized as " 'civil,' " that designation is "gross and inexact." The Court categorized them as "unique" and held that the discovery provisions of the F.R. C.P. are not completely and automatically applicable to habeas corpus, but a court may fashion, from rules available, suitable relief to fit the circumstances. We also note that habeas corpus can be utilized in a civil context when custody of a child is sought, *State ex rel. Klopotek v. District Court of Sheridan County*, supra; *Peters v. Campbell*, 80 Wyo. 492, 345 P.2d 234 (1959), and can have other civil aspects where private restraint is an issue.

making the affidavit has taken an oath. It was observed in *Thatcher v. Darr*, 27 Wyo. 452, 199 P. 938, 16 A.L.R. 1442 (1921), that the making of an affidavit is a voluntary act not under the compulsion of a subpoena and given without notice.

■ Significantly, however, a characteristic of the particular affidavits here furnished "in support" of the petition for post-conviction relief is that they were made only on "information and belief." Such an affidavit—if it can even be called an affidavit—is of inferior and unacceptable quality for the purpose of supporting a petition for post-conviction relief unless there is a satisfactory explanation of the information upon which the belief is based. An important requirement of an affidavit is that the affiant have personal knowledge of the facts set out, even though only as to the sources of affiant's information upon which a belief is founded. One who acts on information and belief does not have personal knowledge of the facts. This Court has had occasion to discuss the phrase "supported by affidavit" as it appears in Art. 1, § 4, Wyoming Constitution.[13] It was held in *State v. Peterson*, 27 Wyo. 185, 194 P. 342 (1920), that an affidavit based on information and belief will not satisfy that provision of the Constitution. The reason behind the holding is that one making such an affidavit is representing facts sworn to by no one. No one is criminally liable if the facts should prove to be false. One of the strengths of an affidavit is that it is made under penalty of perjury.[14]

■ The affidavits, including the affidavit purportedly verifying the petition, do not set out what facts are within the personal knowledge of the affiant, if there are any such facts, or even what particular information the affiant has that leads him to the belief that such facts as are set out are true. Those facts are the ones appellant is maintaining on a mysterious level until a hearing is held. As further pointed out in the reasoning of *State v. Peterson*, allegations are not verified by an affidavit when somebody is only informed and believes they are true. Such is a mere evasion of law. The most improbable stories and falsehoods may be believed because someone has passed on that information. An affidavit manufactured of such stories and facts, on information and belief, cannot elevate them to truth. Such an affidavit is valueless. The facts and the source of the information from which they are derived must be exhibited before a belief has any weight at all. Verification on information and belief, where there is contained in the affidavit statements in positive terms setting out the facts upon which the information and belief are founded, may furnish support. *State v. Bruner*, 78 Wyo. 111, 319 P.2d 863 (1958). The underlying circumstances must be detailed. *Croker v. State*, Wyo., 477 P.2d 122 (1970). Facts which lead the affiant to believe must be presented. *Bonsness v. State*, Wyo., 672 P.2d 1291 (1983).

The appellant was convicted on the basis of testimony sworn to in open court before a jury convened to test the truth or falsity of facts elicited from witnesses from their demeanor and otherwise. The witnesses were subjected to cross-examination as a further testing device. The right of rebuttal was available. The witnesses were confronted by the accused. Against that full-blown judicial process in search of the

---

13. Article 1, § 4, Wyoming Constitution:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, *supported by affidavit,* particularly describing the place to be searched or the person or thing to be seized." (Emphasis added.)

14. Section 6-5-301, W.S.:

"(a) A person commits perjury if, while under a lawfully administered oath or affirmation, he knowingly testifies falsely or makes a false affidavit, certificate, declaration, deposition or statement, in a judicial, legislative or administrative proceeding in which an oath or affirmation may be required by law, touching a matter material to a point in question.

"(b) Perjury is a felony punishable by imprisonment for not more than five (5) years, a fine of not more than five thousand dollars ($5,000.00), or both."

truth, a person convicted as a result, in seeking post-conviction relief, must offer substantial grounds to justify the drastic step of upsetting the judgment and sentence. We consider that to be a compelling basis for requiring that a petition for post-conviction relief be supported by affidavits based on something more solid than information and belief.

■ We are satisfied that the district court and this Court can call upon the appellant to set out facts under oath to show how he can prove his allegations before granting an evidentiary hearing. *De-Vincent v. United States*, 602 F.2d 1006 (1st Cir.1979). See also *McBride v. United States*, 446 F.2d 229 (10th Cir.1971), cert. denied 405 U.S. 977, 92 S.Ct. 1203, 31 L.Ed.2d 252 (1972), which held that one seeking post-conviction relief can be required to state how he will prove his claim before a hearing is required.

■ Appellant asserts that other affidavits and other information are not presently available because investigation is not complete. Section 7–14–102 requires that the petitioner in a post-conviction relief petition attach "affidavits, records, or other evidence supporting the allegations *or shall state why the same are not attached*." (Emphasis added.) The murders of the Vehar family took place on August 7, 1977. The murder of Jeff Green occurred on May 19, 1979. Appellant was tried in September, 1979, and retried on the penalty phase in May, 1982. Appellant gives us no clue about what is being investigated or when such investigation will be concluded. No good cause is shown why there should be further delay. In the absence of more definite information, we can only conclude that a seven-year period of knowledge of the circumstances and opportunity for investigation is sufficient, in the light of the proven involvement of the appellant.

Appellant's explanation of why other materials are not attached is framed in vague generalities. It states other facts have been discovered but does not state what they are. It fails to state what witnesses are not readily available, though it alleges some are unavailable; nor is it stated what evidence they would produce. It states others may be legally disqualified from signing affidavits absent a court order, but fails to state who they are or what their testimony would be. It is stated that others refuse or are reluctant to cooperate because of intimidation by prosecutors Spence and Moriarity, but there is no allegations of what could be divulged or the nature of the alleged intimidation. A court needs a more detailed explanation to excuse failure to supply affidavits.

IV

■ This Court in its decisions has manifested a point of view that the right to claims for relief by a petition for post-conviction relief does not afford the right to have such proceedings heard as an appeal from the original trial. The petition will not lie where the claimed error could or should have been raised in an appeal. *McCutcheon v. State*, Wyo., 638 P.2d 650 (1982); *Munoz v. Maschner*, Wyo., 590 P.2d 1352 (1979). It follows then that when claimed errors were once adjudicated in an appeal, finality has attached. Said another way, our post-conviction statute does not offer remedies previously pursued to completion. *Hoggatt v. State*, Wyo., 606 P.2d 718 (1980); *Johnson v. State*, Wyo., 592 P.2d 285, cert. denied 442 U.S. 932, 99 S.Ct. 2864, 61 L.Ed.2d 300 (1979); *Kennedy v. State*, Wyo., 443 P.2d 138 (1968); *Church v. Gladden*, 244 Or. 308, 417 P.2d 993 (1966). Endless repeating must stop. The authority for allowing a petition for post-conviction relief does not permit its use as a guise for a second appeal on matters already litigated on appeal, nor a guise for a second motion for new trial on grounds previously denied and affirmed on appeal. *Carstens v. Rans*, Iowa, 210 N.W.2d 663 (1973); *Roe v. Director, Patuxent Institution*, 240 Md. 717, 214 A.2d 162 (1965). The petition is an extraordinary authorization to seek relief under "extraordinary circumstances" which strongly suggest a "miscarriage of justice." The sub-

stance of a fair trial must be missing. *Johnson v. State,* supra; *Munoz v. Maschner,* supra. The quoted language from Johnson expresses a thought enunciated in *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974), with respect to post-conviction relief.

■ However, if a petitioner makes a showing of innocence or probability of a different verdict by appropriate attachments to his petition which indicates a need for verification at a hearing, then a hearing may be granted. If good cause is shown, a review is available. In oral argument, appellant's counsel cloaked in secrecy the basis for his conclusions of innocence and charges of unfair trial practices by the prosecution, and asserted that the district court need not be enlightened until a hearing is held. That is not good enough for the reasons set out in the previous parts of this opinion. Those revelations must appear as a part of the petition and attachments before the court embarks on a hearing.

Nor do we say that we need not consider some new authority with respect to the state of the law on a material question of law requiring a different decision. An intervening change of the law on constitutional questions in this state or other acceptable authority will prompt us to reconsider and if required reverse a position previously taken. *United States v. Nolan,* 571 F.2d 528 (10th Cir.1978). If the new law would have exonerated the appellant, had it been in effect at the time of his conviction and affirmance on appeal, then we must grant him relief. In the case now before us, we cannot find that any new constitutional law has been discovered requiring a reversal or a new trial.

## V

We now move to a review of each claim made in appellant's petition for post-conviction relief filed in the district court. Each claim alleges that appellant did not for the reasons stated receive a constitutionally fair trial, and due process was denied. We find and hold there was no cause present to reconsider any of the claims previously submitted to this Court in *Hopkinson I, II* and *III.* The appellant's claims of constitutional violations, based upon a denial of due process and other constitutional provisions, are unfounded in all respects. We have the same material present in the record and the opinions that were available to the trial judge, and we hold, from an examination on review, he did not need a hearing to make that determination.

■ In *Kennedy v. State,* this Court made short shrift of an appeal similar to this from a trial court's dismissal of a post-conviction petition based upon a motion that (1) it failed to state a cause of action; and (2) all issues presented had been raised in an appeal and fully adjudicated by this Court. This Court's opinion consisted solely of the statement that:

"Our examination of *Kennedy v. State,* Wyo., 422 P.2d 88 (1967), the appeal above-referred to, discloses all issues relied upon in this post-conviction proceeding had been fully considered and disposed of by this court." 443 P.2d at 139.

This is what the trial judge in the case before us was saying by his brief order of dismissal. The trial judge was entitled to rely upon the files, record of trial, and opinions of this Court in disposing of the petition without a hearing. We prefer to go further in our disposition than this Court did in *Kennedy.*

■ We find no Sixth and Fourteenth Amendments or Art. 1, §§ 6 and 9, Wyoming Constitution, errors. We hold *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, reh. denied 393 U.S. 898, 89 S.Ct. 67, 21 L.Ed.2d 186 (1968), reaffirmed in *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), is still the law. If a juror is unwilling to follow the law and impose the death penalty under statutory guidelines and the case law of the land, then he must be excused from sitting for cause. See *Hopkinson I,* 632 P.2d at 157–160. We are unconvinced by appellant's argument that the jurors

ultimately selected to sit thereupon became prosecution prone, prejudiced, unrepresentative or unreliable because of a willingness to impose the death penalty, if justified. Adequate protective instructions were given to the jurors explaining the burden of the State to prove guilt beyond a reasonable doubt and that the jury was to perform its duty uninfluenced by passion and prejudice against litigants. *Hopkinson III*, 679 P.2d at 1026–1027. The appellant is entitled to an impartial jury and not one likely to find him not guilty. *Keeten v. Garrison*, 742 F.2d 129 (4th Cir.1984). In *Keeten* the court was unimpressed by empirical studies concluding that jurors willing to impose the death penalty were prosecution prone or biased against the defendant.

◼ Appellant again protests an allegedly unfair and prejudicial trial atmosphere. This Court in *Hopkinson III* thoroughly examined the assertions that a general aura of anxiety and fear prevailed during the guilt phase of the trial. It was concluded that appellant was not prejudiced by the presence of guards, references to witnesses being in protective custody, and the wearing of protective garments by counsel. It was there noted that all jurors who thought the presence of security measures denoted guilt were excused. *Hopkinson III*, 679 P.2d at 1026–1027. The prevailing atmosphere during the penalty phase was also discussed in some detail in *Hopkinson II*, 664 P.2d at 84–86. One of the reviewing court's statutory duties in reviewing the sentence of death is to consider whether it was imposed under the influence of passion, prejudice, or any other arbitrary factor. Section 6–2–103, W.S. That we have done, and we see nothing new in what has been offered which requires us to do it again.

◼ Appellant's Sixth Amendment and Art. 1, § 10, Wyoming Constitution claim of ineffective assistance of counsel in his guilt/innocence trial (*Hopkinson I*) is unsupported by any specific facts or references to the record which justify reconsideration. It is alleged that it was "believed" that Phyllis Snedden was an important witness for the defense, "whose testimony might have shown that Mike Hickey did not bomb the Vehars' home," but that the special prosecutors had her intimidated so that she would not speak to defense counsel. There is then related what this Court on two previous occasions has held to be no error; i.e., the purported manipulation of witnesses Kristi King and Jennifer Larchick. *Hopkinson III*, 679 P.2d at 1025–1026; *Hopkinson I*, 632 P.2d at 144–145. It is claimed that being deprived of access to these witnesses prevented appellant from obtaining effective assistance of counsel.

We are given no hint at all of the facts Phyllis Snedden's testimony would reveal even if she were to testify. Appellant must show more to justify a hearing—much more. Blind speculation does not satisfy § 7–14–102, which requires a clear statement with attached supporting evidence, neither of which is present.

◼ Being deprived of access to witnesses is not ineffective assistance of counsel though it may be, if true, constitutionally unfair conduct. Ineffective assistance of counsel has to do with the professional performance and competence of an attorney. The standards of adequacy by which an attorney is measured are set out in *Hopkinson II*, 664 P.2d at 76–79. Effective assistance of counsel is that which would reasonably be rendered by a reasonably competent attorney under the facts and circumstances of the case; appellant makes only bald conclusive statements that his attorneys "failed to interview several key witnesses before trial" and failed "to make numerous crucial objections during the prosecution's opening statement and throughout the trial." Without more, neither the trial court nor this Court can judge the competence of defense counsel. Where charges of incompetency of counsel are made when seeking post-conviction relief, the appellant has the burden of submitting allegations which demonstrate actual incompetency of counsel as reflected in the manner of carrying out their duties as trial

counsel, and demonstrate substantial prejudice resulting therefrom without which the outcome of the case would probably have been different. *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied — U.S. —, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); *Spilman v. State,* Wyo., 633 P.2d 183 (1981); *Hoskovek v. State,* Wyo., 629 P.2d 1366 (1981); *State v. Rogers,* 113 Ariz. 6, 545 P.2d 930 (1976). The dissent in *Hopkinson I,* 632 P.2d 199, et seq., had some criticism of appellant's counsel in the sentencing phase but not the guilt/innocence trial. The majority did not reach any issue of incompetency of counsel in the sentencing phase. The death sentence was reversed, and the case was remanded for a new trial on the sentencing phase as to the murder of Jeff Green only, but for other reasons than incompetency of counsel.

■ In this Court's past reviews of the record, no incompetency of counsel appeared. The mere fact, when viewed in retrospect, that greater skill might have been employed or better judgment or discretion practiced does not spell incompetency. *Hoskovek v. State,* 629 P.2d at 1368. We cannot see that appellant's trial counsel did any less than could have been reasonably expected of them under the pressure of battle, considering all the circumstances. It will be recalled that appellant personally elected to put on no defense because he did not want it rebutted. This was covered at length in *Hopkinson III,* 679 P.2d at 1020. This Court decided in *Hopkinson III,* 679 P.2d at 1021, that a desire to change strategy or tactics is not a ground for a new trial. If it is not a ground for a new trial, neither is it a ground for post-conviction relief. It will also be recalled that appellant, when his counsel objected during closing argument, interceded and said, "Let him go. I would like him to say what he wants to say, your Honor." *Hopkinson I,* 632 P.2d at 163. We find no factual basis set forth that indicates counsel's representation fell below an objective standard of reasonableness to justify a hearing on counsel's competency. Appellant had effective counsel when measured against the lengthy trial proceedings had. The appellant was up against a mass of condemning evidence from which even one disposed to creating miracles would have a phenomenal task extricating him.

No factual basis is shown, by affidavit or otherwise, that the testimony of Mike Hickey was perjured, or that at the time of the trial the prosecutors knew it was perjured, as charged by appellant. The testimony of Mike Hickey was examined in *Hopkinson I,* 632 P.2d, at various places and re-examined in *Hopkinson III,* 679 P.2d at 1015. There this Court found that there were some 476 pages of testimony by Hickey, and he was cross-examined at length by appellant's counsel, "who had Hickey's grand jury testimony and the testimony given at Jamey Hysell's trial along with other statements made by Hickey." Other evidence and testimony corroborated Hickey's testimony that appellant hired him to blow up the Vehar home, which he did. Appellant offers nothing new whatsoever.

The same can be said with respect to the testimony of Dorothy Price. This Court disposed of that in *Hopkinson I,* 632 P.2d at 128, as well. Additionally, appellant has failed to allege with any specificity whatsoever wherein the testimony of Dorothy Price would mislead and unfairly prejudice the jury or, if so, wherein it would affect the ultimate outcome of the case.

The testimony of John Suesata has been litigated on two previous occasions, *Hopkinson III,* 679 P.2d at 1023, and *Hopkinson I,* 632 P.2d at 141–144. Appellant, on "information and belief," states Suesata was a paid informant of the state and federal governments. Nowhere does he state what information he has which leads him to that belief. The required specificity and support are lacking.

■ Many of the claims of the appellant, such as that with respect to Suesata, are actually matters which are characteristically found in motions for a new trial by convicted persons. The outcome was not as they wished. Petitions for post-conviction relief are not intended to be used as

a supplemental motion for new trial on the basis of newly discovered evidence. When that is attempted, aside from the fact that it is made after the two-year limitation on moving for a new trial on the ground of newly discovered evidence, it should be judged by the same standards as applicable to motions for a new trial. Some of those standards were set out in *Hopkinson III,* 679 P.2d at 1013, citing *Grable v. State,* Wyo., 664 P.2d 531 (1983). One requirement is that it must be such as would probably produce an acquittal. During oral argument in the case now before us, counsel for appellant was asked whether he intended to leave an inference that Suesata was an informant paid by the State of Wyoming in the Hopkinson case. Counsel in oral argument said he did not know, but he asserted that he knew Suesata was an informant in this case and other cases. He could not provide any other facts to justify the "information and belief" he had when he signed the petition for post-conviction relief. If we do not have specifics, then it is impossible to say whether such evidence would probably produce an acquittal. We also note that new evidence for the purpose of impeachment is not a ground for new trial. *Hopkinson III,* 679 P.2d at 1013. Obviously appellant feels that Suesata being a paid informant impeaches someone. Since Suesata did not testify, it would not impeach him. It would not impeach anyone else who was a witness providing testimony connecting Suesata to the hired killers. Paid informants usually come from the criminal society. We question the materiality of such information, even if there was any visible support for the claim. In any event, appellant fails to show any due process error.

Appellant misconstrues this Court's discussion in *Browder v. State,* Wyo., 639 P.2d 889 (1982). Appellant cites the dissent which does not represent the law of the case. Browder did not change the rule that prosecutors must not assert their own credibility as a basis for conviction of a defendant, express a personal belief as to the falsity of testimony, presume to be witnesses through their closing, or reverse the

holdings of other cases in which prosecutorial misconduct of that sort was found to be absent. 639 P.2d at 893. See also *Wheeler v. State,* Wyo., 691 P.2d 599 (1984). Browder was a case of aggravated prosecutorial misconduct in the closing argument. It is one thing in closing argument to express a personal belief unsupported by evidence in the case and another to express a belief based upon the evidence. The prosecutors were here doing the latter. The trial judge took special pains to instruct the jury in that regard in the case now before us; i.e., that statements of counsel are not evidence. See *Donnelly v. De Christoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), which discusses the curative value of such an instruction to defuse the potential prejudice of a prosecutor's views of the evidence. Based upon the totality of the circumstances, this Court found in *Hopkinson I* that the prosecutor did not overstep his bounds in either the opening statement, 632 P.2d at 112–120, or the closing argument, 632 P.2d at 145–147. There was no departure from the fundamental fairness so essential to justice. We do not retreat from that holding.

Appellant accuses but makes no showing that exculpatory evidence was suppressed by the prosecution; there is set out no more than a bald statement of conclusion in a charge of wrongdoing in that the prosecution did not turn over requested exculpatory material. We see no reason to reverse the position set out in *Hopkinson III,* 679 P.2d at 1028, wherein were found no *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), or *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), errors of constitutional magnitude or otherwise.

We have in this opinion held that this is not basically a civil action but is the continuation of a criminal action, though mistakenly filed as a separate action. We hold that the Wyoming Rules of Criminal

Procedure, therefore, fittingly apply. Rule 18(b) and (c)(1), W.R.Cr.P.,[15] provides:

"(b) * * * Except as provided in subdivision (a)(2) this rule does not authorize the discovery or inspection of reports, memoranda or other internal governmental documents made by governmental agents in connection with the investigation or prosecution of the case, or of statements made by state witnesses or prospective state witnesses (other than the defendant) to governmental agents except as provided in subdivision (c) of this rule.

"(c) *Demands for production of statements and reports of witnesses.*

"(1) After a witness called by the state has testified on direct examination, the court shall, on motion of the defendant, order the state to produce any statement (as hereinafter defined) of the witness in the possession of the state which relates to subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use."

It has been held that discovery under this rule is available for use at the trial and, as noted in the rule, must "relate to the subject matter of the testimony of the witness," and is for the purposes of cross-examination. *DeLuna v. State*, Wyo., 501 P.2d 1021 (1972). The law as enunciated in *DeLuna* is based upon federal authority cited therein. We understand the prosecutor has a continuing duty to disclose, but appellant gives us no factual reason at all to believe the prosecutor did not fulfill his duty.

We think it is interesting to note the following from *United States v. Agurs*, after the Court had observed that a general request for " 'Brady material' " or " 'anything exculpatory' " is no request at all:

" * * * If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice.

"Whether or not procedural rules authorizing such broad discovery might be desirable, the Constitution surely does not demand that much. While expressing the opinion that representatives of the State may not 'suppress substantial material evidence,' former Chief Justice Traynor of the California Supreme Court has pointed out that 'they are under no duty to report sua sponte to the defendant all that they learn about the case and about their witnesses.' *In re Imbler*, 60 Cal.2d 554, 569, 35 Cal.Rptr. 293, 301, 387 P.2d 6, 14 (1963). And this Court recently noted that there is 'no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.' *Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 [ (1972) ]. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." 96 S.Ct. at 2400 (footnote omitted).

The appellant gives us no inkling upon which to form a basis or reason to even suspect that the prosecution suppressed or concealed any material exculpatory evidence.

The use of hearsay evidence of which appellant again complains, within the Wyoming Rules of Evidence, was covered in detail in *Hopkinson I*, 632 P.2d at 127–137. The Sixth Amendment constitutional right of witness confrontation within the context of this case was in particular treated in detail, and tests of reliability were applied, 632 P.2d at 132–137. Appellant makes no

---

**15.** This rule is practically identical to Rule 16(b), Federal Rules of Criminal Procedure, pri-

or to amendment of the federal rule in 1975.

new showing to justify our turning back from that position.

Appellant continues to assert that he was not shown to be responsible for the grisly searing of Green's flesh and burning out of an eye by a hot piece of metal. We see no need to further review the sufficiency of the evidence in this regard. A majority of the Court found extensive evidence, of which the welder was but a small part, connecting appellant to the torture of Jeff Green and that it was especially heinous, atrocious or cruel. That was fully developed in Part II of *Hopkinson II*, 664 P.2d at 57–59. *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), was considered and applied by the majority. Appellant's culpability was measured. Appellant intended that lethal force be applied. See our discussion of *Enmund* in *Osborn v. State*, Wyo., 672 P.2d 777, 794 (1983). We are unconvinced by appellant's unsupported claim in this regard.

Appellant continues to protest use of murder to avoid arrest as a proper aggravating circumstance justifying capital punishment. The viability of the murder-to-avoid-arrest aggravating circumstance was fully explored in *Hopkinson II*, 664 P.2d at 58–59. The murder of Jeff Green took place while appellant was incarcerated on a federal offense at appellant's express direction in an effort to prevent his arrest for the murders of the Vehar family. Absent the testimony of Jeff Green, the prosecution of appellant would be more difficult, if not impossible, for less courageous and skilled prosecutors than those who assumed the gargantuan task of putting together the evidence against appellant. To appellant's way of reasoning, Jeff Green was the essential witness at the time. He was unaware of the role Hickey would play, a witness whom appellant probably visualized as being under his control because of appellant's knowledge of Hickey's murder of the Wyckhuyse girl. Nor did appellant understand the subtleties of the hearsay rule. It is sophistry to argue that since appellant was already in custody, the murder of Jeff Green, therefore, was not to prevent his arrest. He was in custody for an offense against the United States. When a grand jury of the State of Wyoming returned an indictment against him for the murders of the Vehar family, the jurisdiction and custody of the United States were relinquished for the purpose of allowing his arrest under the Wyoming warrant so he could stand trial for multiple murders; his custody was thereupon transferred to the State of Wyoming. There is no need to further consider the issue on the basis of a different Utah statute, as appellant argues, or on the basis of other statutes we do not have. This Court has construed a Wyoming statute under Wyoming jurisprudence, and we see no reason to change position.

We held in *Hopkinson II*, 664 P.2d at 68–71, that on retrial of the penalty phase, aggravating circumstances not found to exist in the first trial may be found to exist in the second. A majority of this Court concluded that it is not double jeopardy under the Fifth Amendment or Art. 1, § 11, Wyoming Constitution. Appellant presents no new convincing authority to support his position to the contrary as outlined in his petition for post-conviction relief.

On the issue of double jeopardy raised in the Consolidated Petition for Post-Conviction Relief and Writ of Habeas Corpus filed with the district court, and in his brief here, appellant cited *Arizona v. Rumsey*, — U.S. —, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984), as perhaps a change in the law. It will be recalled that in *Hopkinson I*, this Court remanded to the district court for a new trial of the penalty phase. All convictions were affirmed but the remand was for only a "new sentencing trial as to the murder of Jeff Green." 632 P.2d at 172. It was there footnoted, n. 46, that:

"* * * Only where a judge or jury refused to impose the death penalty in the first instance is a state barred from seeking it a second time. *Bullington v. Missouri*, 1981, [451] U.S. [430], 101 S.Ct. 1852, 68 L.Ed.2d 270. There can be no new penalty trial as to the Vehar mur-

ders in that the jury failed to impose the death penalty as to those crimes."

*Arizona v. Ramsey* followed *Bullington* and held that an initial sentence of life imprisonment is the equivalent of an "acquittal" of a death sentence and there cannot be a new trial on the appropriateness of the death penalty. This Court adhered to that rule. The first jury, *Hopkinson I*, did impose the death sentence as to the murder of Jeff Green, so there was no "acquittal" of a death sentence. Jeopardy did not attach to the Jeff Green murder, so there was no double jeopardy in the retrial of that issue in *Hopkinson II*. Jeopardy had attached as to the Vehar murders. *Arizona v. Rumsey* has no effect on our holding that aggravating circumstances are not the subject of double jeopardy. Appellant insists on disinterring *State v. Silhan*, 302 N.C. 223, 275 S.E.2d 450 (1981), which was buried by the majority in *Hopkinson II*, 664 P.2d at 70–71. We see no need to disagree with that holding in *Hopkinson II* and reject appellant's argument to the contrary.

We see no relevance to appellant's established guilt that the persons actually torturing and killing Jeff Green have not been apprehended or tried or that it was even represented to the second jury in this case that they would be. Appellant reasserts his position that it was prejudicial to lead the jury to believe that arrests were imminent. The trial court instructed the jury by Instructions 3A and 4 [16] that a person who with criminal intent "aids, counsels, encourages, hires, commands or otherwise procures the illegal act" is to be punished the same as a person who does the act. It is farfetched to believe that the outcome of the case would be any different than it was if those who administered the killing were caught. The sheriff and the prosecutors may have believed that apprehension was imminent, but circumstances altered a realization of the belief. That is hardly dishonesty or constitutional unfairness. Appellant's arguments in this connection are *non*

*sequitur*. The following is illustrative. Appellant thinks it is unfair to ask the following question: "'So, there was no question that the individuals who took him [Jeff Green] had a gun?'" The witness replied, "'None whatsoever.'" Appellant then argues no evidence was introduced to show Jeff Green was taken at gunpoint. The question does not ask if Jeff Green was taken at gunpoint. The individuals must have had a gun because Jeff Green ended up with a bullet hole through his neck, severing his spinal cord and exiting through the jaw. *Hopkinson II*, 664 P.2d at 73. It is a reasonable inference that they had a gun. Try as we may, we cannot connect the above question with whether the killers were apprehended and, if not apprehended, why that infers appellant is innocent. This Court thoroughly covered the matter of appellant's guilt in *Hopkinson I*, 632 P.2d at 97–100, even though he was not present at the death scene.

Appellant argues that the venue for the second sentencing trial should have been changed as requested and, therefore, appellant did not receive a fair trial. Then follow some statements, of conclusions only, that jurors who sat to try the penalty phase were prejudiced because the second trial was in the same county as the first. This question was not previously raised in this form, though during this Court's review of the record upon appeal of the second trial judgment and sentence, our obligation to determine whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor was met. We examined into all the matters of which appellant now complains in that regard, *Hopkinson II*, 664 P.2d at 85–86, and found no influence of passion, prejudice, or other arbitrary factor.

 Appellant makes no showing whatsoever, and offers nothing to support his statement of a naked conclusion, that (1) because of failure to grant a change of

---

**16.** Copies of instructions given the jury on the retrial of the case are attached as an exhibit to appellant's petition for post-conviction relief.

venue, he was tried by a prejudiced jury; and (2) it was error of constitutional proportions violating the Sixth Amendment giving an accused a right to an impartial jury. In order for a change of venue to be granted, the burden is on a defendant to show prejudice so great or general as to prevent his receiving a fair and impartial trial and the decision is within the sound discretion of the trial judge. *Collins v. State*, Wyo., 589 P.2d 1283 (1979). Rule 23(a), W.R.Cr.P., provides that the court must be satisfied that the prejudice is great. The trial judge was not satisfied nor are we. Nothing is presented which shows prejudice by any juror. There is no requirement that a prospective juror be totally ignorant of the facts and issues involved as long as he can render a verdict based on the evidence presented in court. *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The voir dire of the jury produced a fair and impartial jury.

Appellant has again challenged the constitutionality of Wyoming's death penalty statute. We have on two occasions in this same case held it constitutional, *Hopkinson II*, 664 P.2d at 63–64; *Hopkinson I*, 632 P.2d at 149–157. Nothing new has been presented to indicate any change in the law as we have previously construed it to be. We do not accept the invitation to reverse that stand.

■ We will apply as appropriate in principle Rule 26(b)(1), W.R.C.P., which provides that parties may obtain discovery of matter relevant "in the pending action." When an action is dismissed, there is no longer a pending action. Since the dismissal of appellant's Consolidated Petition for Post-Conviction Relief and Writ of Habeas Corpus leaves no pending proceeding, there is no occasion to consider acting on appellant's motion seeking discovery of the grand jury proceedings.

Our fourth review concludes that no new evidence in a form qualitatively worthy of consideration has been produced or shown to exist, and no new grounds in law or otherwise appear upon which to reverse this Court's previous holdings in this case. Appellant received a fair trial within the context of the Fourteenth Amendment and its counterpart, Art. 1, § 6, Wyoming Constitution, and was given the protection of all his other constitutional guarantees. The trial judge properly dismissed without prejudice the petition for post-conviction relief, without a hearing, such petition having failed to conform to necessary threshold requirements.

The dismissal of the Consolidated Petition for Post-Conviction Relief and Writ of Habeas Corpus is affirmed as is the order denying discovery of grand jury proceedings. Removal of the trial judge as prayed for is denied. The petitions for leave to file petitions for writs of mandamus and prohibition are denied, and the trial court is directed to set a new date for appellant's execution.