(No. 37427.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RONALD SMITH, Plaintiff in Error.

*Opinion filed January 21, 1965.*

DAVID F. ALLEN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and GEORGE W. KENNEY, Assistant Attorneys General, and ELMER C. KISSANE and JOHN GANNON, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

Defendant, Ronald Smith, and one Ulysses Fladger were jointly indicted by the grand jury of the criminal court of Cook County for the crime of rape. Fladger was tried by jury and acquitted. The defendant was tried by the court without a jury, found guilty, and sentenced to the penitentiary for a term of 50 years.

The defendant's principal claim is that the evidence was insufficient to establish his guilt. The complaining witness testified that as she was walking home from a friend's house she was grabbed by two men who asked her if she had any money or "reefers". She identified the defendant as one of the men and testified that the other man was called "Skip" or "Lou". She testified that the men searched her and then took her under a porch where the defendant pulled her slacks down and got on top of her. He did not have inter-

course with her at that time. According to the witness, the defendant decided that he wasn't comfortable and the two men took her through an alley and a gangway to a basement. She testified that the defendant was holding her arm behind her back and had his other hand over her mouth as they were walking in the alley. The other man told her that if she loved her mother and father she should keep her mouth shut or otherwise she knew what would happen. When they entered the basement Lou held a knife to her and told her to take off her clothes. She screamed and kicked but he took off her clothes, pushed her on the bed and had intercourse with her. When she was asked what happened next she replied, "Ronald Smith got on top of me and he did the same thing", and that after that, "Ronald Smith got off and Louie got back on." She testified that while Lou was engaging in the second act the defendant left the basement and came back about 15 or 20 minutes later with Fladger. The witness testified that after the defendant returned, "he wanted to get back on top of me again, so he did". She was asked whether there was any conversation at the time the defendant had intercourse with her. She replied that the defendant had told her, in vulgar language, that he wanted to have intercourse with her, but that she did not make any reply. The defendant and Lou talked Fladger into having intercourse with her and while he was so engaged, a man identified only as Richard, who said he lived there, entered the basement and told the defendant and the other two men to get out. The defendant, Lou and Fladger left, and the other man helped the witness find her clothes. After she dressed she and the man started walking toward her home and after walking a short distance they met two friends of the complaining witness who picked her up and drove her home. When she arrived home she told her mother and father what had happened and the police were called. She was taken to a hospital where she was examined by two physicians.

On cross-examination she testified that she did not scream when she was first approached by the two men. It was also brought out that when she was walking through the alley with the defendant and Lou they passed by two people who were parking their car. The lights were on inside the car and a man was just getting out of the car. Although she came within 10 feet of the car she did not scream or attempt to escape. She first testified that the defendant did not hold her at the time he had intercourse, but later testified that when the defendant got on the bed with her in the basement he first held her down by placing his hands on her shoulders but later removed his hands. She tried to kick him and push him away. She testified at one point in her cross-examination that the defendant never struck her, but also said that both the defendant and Lou had bounced her head against the wall. She testified that there were no bruises on her face or body. She testified that when Richard came into the apartment and told the others to leave, Fladger was in the act of having intercourse with her and she was not screaming. She did not then tell Richard she had been raped but told him after the other men had left. The man did not offer to call the police.

A police officer testified that he arrested the defendant and Fladger and took them to the hospital where she identified both men. The officer testified that the defendant admitted being with the complaining witness on the night in question and admitted having intercourse with her. The defendant told the officer that to his knowledge Lou had no knife.

Medical testimony was introduced by stipulation showing that at the time of the examination the doctors found lacerations, swelling and soreness of the complaining witness's private parts.

Two written statements of the defendant were offered in evidence without objection. In the first of these statements taken by the police, the defendant said that he and Lou

grabbed the girl and took her to the basement room where he had intercourse with her once and Lou had it twice. He said that he did not hit the girl nor did he see Lou hit the girl or use a knife. In the second statement, taken by an assistant State's Attorney, he stated that he and Lou grabbed the girl and walked her through an alley to the basement. He admitted having intercourse with her. When she was asked whether he forced the girl to have sexual relations with him he answered, "Not in brutality. I just told her I wasn't going to hurt her." He said that neither he nor Lou threatened her with a knife and said that the only time the girl screamed was when he and Lou first grabbed her on the street. He said in his statement that he knew the girl did not want to have intercourse with him.

The defendant was the only witness for the defense. He admitted having intercourse with the complaining witness, but denied using any force or threats. He testified on cross-examination that he signed the two statements because a police officer told him that he would put the defendant in a room with the complaining witness's father, who would beat him to death.

The defendant earnestly contends that this evidence was insufficient to show that the admitted act of intercourse was accomplished by force and against the will of the complaining witness. There is no definite standard fixing the amount of force required and each case must be considered on its own facts. It is the general rule that if the female has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her will. However, resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female, nor where she is overcome by superior strength or paralyzed by fear, (*People* v. *Faulis,* 25 Ill.2d 457). Here, there was evidence that the complaining witness, a 16-year-old girl, was grabbed by two men and forcibly led through an alley; that the men threatened her

family; that one of the men was armed with a knife; that both men banged her head against the wall; and that she screamed and kicked and tried to push the defendant away. This evidence is sufficient proof of force and resistance. (*Cf. People* v. *Elder,* 25 Ill.2d 612; *People* v. *Jones,* 26 Ill.2d 300; *People* v. *Harrison,* 25 Ill.2d 407; *People* v. *Brown,* 29 Ill.2d 375.) It is immaterial that it was defendant's companion and not the defendant who threatened the witness with the knife. (*People* v. *Jeffries,* 26 Ill.2d 248, 254.) We therefore hold that the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt.

The defendant also contends that the State was under an obligation to prove that the defendant's confessions were voluntary and that since the State did not call all the witnesses who were present when the confessions were made, the confessions should have been excluded. This contention is based upon the defendant's testimony on cross-examination that he made the statements because of a threat to lock him up in a room with the victim's father. A confession obtained by coercion is, of course, inadmissible, and it is the usual rule that where an issue is raised concerning the voluntary nature of a confession the court must make a determination of that issue. However, constitutional claims, like other claims may be waived. The record clearly shows that defendant's counsel stipulated that the confessions might be admitted in evidence without objection. This agreement waived any claim that the confessions were improperly obtained. It is of no significance that the attorney was appointed by the court, for the same rules of procedure apply whether counsel is appointed or privately retained. (*People* v. *Damen,* 28 Ill.2d 464.) The claim of coercion is therefore not open to consideration on this writ of error.

The defendant's final argument is that the trial judge had presided at Fladger's jury trial and by reason thereof was prejudiced against the defendant. The record shows that the State recommended a sentence of 199 years. The

court stated that the decision of the jury in the other case would not have anything to do with the sentence imposed on the defendant. The court went on to say that he thought the jury "went haywire" but stated that the cases were different and that a jury would never think of discharging the defendant. The court then imposed the 50-year sentence. We do not believe that the statements of the court establish that he was prejudiced against the defendant because of his knowledge of the other trial. *Cf. People* v. *Wilson,* 24 Ill.2d 598, 602.

We find no prejudicial error in the record and are satisfied that the evidence was sufficient to establish the defendant's guilt. The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*