596 P.2d 1179
**The STATE of Arizona, Appellee,**

v.

**Johnny Paul LONGORIA, and Jose Martin Pasillas a k a Martin Pasillas Mata a k a Jose Martinez Gonzales, Appellants.**

Nos. 2 CA–CR 1566, 2 CA–CR 1635.

Court of Appeals of Arizona, Division 2.

April 25, 1979.

Rehearings Denied May 30, 1979.

Reviews Denied June 26, 1979.

8

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Robert C. Brown, Casa Grande, for appellant Longoria.

Richard LaPaglia, Jr., Eloy, for appellant Pasillas.

## OPINION

HOWARD, Judge.

This is a consolidated appeal from a joint jury trial. Appellants, charged with stabbing a fellow inmate at the Arizona State Prison, were convicted by a jury of assault with a deadly weapon in violation of A.R.S. Sec. 13–249(B) and were sentenced to terms of not less than 10 nor more than 15 years in the Arizona State Prison to be served concurrently with the terms they were currently serving. Several issues have been presented to us for review.

1. Did the trial court err in admitting into evidence, pursuant to the written stipulation of the state and appellant Pasillas, the results of Pasillas' lie detector test?

2. Did the trial court err in refusing to grant a mistrial based on the state's alleged suppression of photographs used in a photographic lineup?

3. Should the trial court have sua sponte severed Longoria's trial from that of Pasillas?

4. Was appellant Longoria denied effective assistance of counsel?

5. Did the trial court err by not granting a mistrial or continuance, sua sponte, when the state revealed that it had found the knife used in the assault?

We find no prejudicial error.

The record discloses that the victim, Walter Souders, was a resident of Cell Block 4 at the Arizona State Prison. The cell block has several tiers and each is called a "run".

Souders lived on John Run. Prior to the stabbing, Souders had been approached about paying for protection. He refused to pay. His cellmate relayed a message to him that he either should pay for protection or leave the building, but Souders still refused to pay.

The stabbing occurred while John Run occupants were going to dinner. Souders was grabbed by one inmate at the entrance to the dining hall and was stabbed by another. He was taken to the prison hospital where he told the prison authorities that he had been stabbed by two Mexicans from John Run. A short time later, when Souders was being loaded into an ambulance, he was shown photographs of all the persons on John Run who had Spanish surnames or appeared to be of Mexican heritage. From these photographs, 13 in all, Souders identified appellants as his assailants. He had not seen Pasillas before but had seen Longoria prior to the stabbing and had once borrowed a cigarette from him.

While Souders was in the hospital, Mr. John Pintek, an agent for the Department of Public Safety, showed him a photographic lineup and he again picked appellants' photographs. He specifically recognized the spider tattoo on Pasillas' neck. Pintek showed him a photographic lineup one or two more times and Souders, on each occasion, picked appellants as his assailants.

Both appellants testified on their own behalf at trial. Neither implicated the other. Pasillas said he saw two Mexican inmates and Mr. Souders holding his stomach. Longoria testified that he was in the dining hall when the stabbing took place.

### THE LIE DETECTOR EVIDENCE

Following the procedure set forth in *State v. Valdez*, 91 Ariz. 274, 371 P.2d 894 (1962), the state, Pasillas and Pasillas' attorney entered into a written stipulation providing for Pasillas' submission to a lie detector test and the subsequent admission at trial of the test results.

On the first day of trial, Pasillas moved the court to deny admission of the test results on the basis that three tests or charts had been run on Pasillas before the examiner could conclude that he was lying when he said he did not stab Souders. However, Pasillas specifically stated that he was not questioning the qualifications of the examiner at that time. The trial court denied the motion because:

"THE COURT: I think you're bound by that document. Certainly, you may go into the manner of conducting the examination and the flaws it may have had, or anything of that nature. But I think that, as I understand the Arizona law, if you have stipulated that in writing, then it becomes admissible."

Appellants claim the trial court erred in this conclusion.

In *State v. Valdez*, supra, the court held that notwithstanding the stipulation the admissibility of the test results is subject to the discretion of the trial judge. In other words, if the trial judge is not convinced the examiner is qualified or that the test was conducted under proper conditions, admission can be refused. The trial judge here was incorrect in concluding that Pasillas could not attack the admissibility because of his stipulation. However, the court was correct in its result, because Pasillas did not show at the time of the motion, or at any time, that the examiner was not qualified or that the test was not conducted under proper conditions. Pasillas' attack, in essence, was directed to the general reliability of a lie detector test. He waived this objection to admissibility when he signed the stipulation.

On the third day of trial, Longoria filed a motion to exclude the results of Pasillas' lie detector test on the grounds that he, Longoria, did not file a written consent as is required in *Valdez*, and on the further ground that its admission would be prejudicial and violate his Fifth Amendment privilege against self-incrimination and Fourteenth Amendment right to a fair trial. The trial court denied Longoria's motion but opined that if a motion to sever had been timely filed, he "might have well considered a severance of the case."

The examiner then testified that Pasillas was lying when he said he did not stab Souders, but that he was telling the truth when he said he did not hold Souders while someone else cut or stabbed him.

Longoria has cited to us one case in support of his argument that admission of the result of Pasillas' lie detector test was prejudicial as to him. *Jones v. State,* 527 P.2d 169 (Okl.Cr.1974) was a rape case. Jones testified that he and the other two defendants did engage in sexual intercourse with the prosecutrix but that she voluntarily consented. The other defendants testified along the same line. Jones was recalled to the witness stand by his attorney and was asked if he had taken a lie detector test. The prosecutor objected, and after an in camera hearing the question was withdrawn. On appeal, Jones contended that the trial court erred because he and the state had stipulated that neither would object to the admissibility of the lie detector results. The appellate court noted that the test results were unfavorable to Jones and, if admitted, would clearly have been prejudicial to the other defendants. In other words, if the jury could conclude from the results of the test that Jones was lying on the witness stand, this would spill over and taint the testimony of the other defendants, as they all told the same story. That is not the case here and *Jones v. State,* supra, is inapposite.

Longoria seeks to analogize the situation here to that in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). As we understand his contention, he claims that the results of the lie detector test are equivalent to an extra-judicial statement by Pasillas that he stabbed Souders. Assuming such an equivalency, the analogy fails because here, in contrast to *Bruton,* the declarant, Pasillas, took the witness stand and was subject to cross-examination.

We conclude there was no error in admitting into evidence the results of the lie detector test.

## SUA SPONTE SEVERANCE

Rule 13.4, 17 A.R.C.P., provides that whenever severance is necessary to promote a fair determination of the guilt or innocence of any defendant, the court may, on its own initiative, order it. Although Longoria never moved to sever, he contends the court was under a duty to do so when it stated that it might have considered a motion for severance if it had been timely made. We do not agree. The rule does not require the court to order a severance; it only gives it the discretion to do so on its own initiative. Having failed to make a motion to sever, severance was waived. Rule 13.4(c), 17 A.R.C.P.

## EFFECTIVE ASSISTANCE OF COUNSEL

Based on the trial court's statement that it might have considered a severance if it had been timely made, appellate counsel for Longoria concludes that trial counsel was ineffective. We do not agree. Relief on the grounds of ineffectiveness of counsel will not be granted unless it is shown that the proceeding was reduced to a farce or sham. *State v. Williams,* 122 Ariz. 146, 593 P.2d 896 (1979); *State v. Perry,* 116 Ariz. 40, 567 P.2d 786 (App.1977). That is not the case here. Longoria was provided with a vigorous defense at trial. The trial court's remarks were gratuitous and after-the-fact speculation.

## DISCOVERY OF THE KNIFE

On the afternoon of the third day of trial the state disclosed that it had just discovered that a knife had been found on the day of the stabbing in the area of the garbage bins. The name of the guard who found the knife was given to the defense attorneys. However, neither attorney pursued the matter. Appellant Pasillas contends the trial court, sua sponte, should have continued the case or declared a mistrial when the state disclosed that a knife had been discovered. Pasillas has supplied no authority for this proposition and we know of none. We are unable to agree with his contention.

 

### FAILURE OF THE STATE TO PRO-VIDE THE PHOTOGRAPHS USED IN THE LINEUP

At the hearing on the motion to suppress in-court and pretrial identification (the *Dessureault* hearing)[1], Agent Pintek testified that he no longer had the photographs he showed Souders at the hospital. At trial, during the state's case-in-chief, Pintek brought the photographs to court with the explanation that he had given them to another agency to use in another case and did not learn they still existed until that very day. Appellants moved for a mistrial or for a directed verdict of acquittal, contending that the failure to bring the photos to the *Dessureault* hearing had hindered their defense. The trial court denied the motion, stating:

> "I assume if there is something about those photographs, that you can make something out of that, you still have ample time to do so."

Under Rule 15.7, 17 A.R.C.P., the imposition of sanctions for violation of a discovery rule is within the trial court's discretion. *State v. Korte,* 115 Ariz. 517, 566 P.2d 318 (App.1977). Here the appellants had not yet put on their case. There was ample time for them to do something. They did not ask the trial court to reopen the *Dessureault* hearing. In fact, they did nothing. The trial court did not err in deciding that a mistrial or directed verdict of acquittal was inappropriate.

Appellant Pasillas also contends the trial court erred in denying his motion for a mistrial based on the fact that the state did not preserve the photo lineup shown to Souders while he was in the ambulance.

The state contends that these photographs were in fact preserved and were brought to court for the *Dessureault* hearing on the day the trial commenced. The record supports the state's contention. On the third day of trial, appellants filed a motion requesting the state to produce the photographic lineup. At the hearing on the motion the state pointed out that by comparing a list made by a Captain Davis with the photographs marked for identification at the *Dessureault* hearing, the state came as close as possible under the circumstances to compliance with production. Pasillas' counsel accepted the state's explanation and the trial court thereupon denied the motion to produce on the grounds that it was moot. The photographs were produced and the explanation was accepted by Pasillas, therefore the trial court did not err in denying a mistrial.

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.

---

1. See *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969), cert. den. 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257.