**Terry Kent SEELEY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 83–244.**

Supreme Court of Wyoming.

March 7, 1986.

Robert A. Monteith, Boynton & Monteith, Casper, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Margaret M. White, Asst. Atty. Gen., for appellee.

Before THOMAS, C.J., and ROSE,* ROONEY,** BROWN and CARDINE, JJ.

THOMAS, Chief Justice.

The primary issues which are to be resolved in this appeal, which is taken from a conviction of sexual assault in the first degree as defined in § 6–4–302, W.S.1977, relate to the necessity for severance of this case from trial with the case of a co-defendant after the cases were consolidated for trial; the sufficiency of the evidence to sustain the appellant's conviction; and the refusal of the trial court to give offered instructions on asserted lesser-included offenses. There are other issues which in some respects intertwine with the primary issues relating to the admissibility of evidence of prior bad acts on the part of the co-defendant; the failure of the court to limit the effect of testimony as to prior bad acts to the co-defendant's case by appropriate instruction; the denial of equal protection of the law because of the ineffective assistance of counsel at trial; and an abuse of discretion in sentencing the appellant. We conclude that there is no reversible error in this case. The judgment and sentence are affirmed.

The statement of issues in Seeley's brief lists the following:

"I. THE PRIOR BAD ACTS EVIDENCE ADMITTED AGAINST CO-DEFENDANT CAREY WAS IMPROPERLY ADMITTED AND WAS PREJUDICIAL TO APPELLANT SEELEY.

"II. THE CASES OF HERMAN CAREY AND TERRY KENT SEELEY WERE IMPERMISSIBLY JOINED FOR TRIAL.

"III. THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT SEELEY A MISTRIAL AND/OR SEVERANCE.

"IV. THE COURT'S FAILURE TO PROPERLY INSTRUCT THE JURY TO 'COMPARTMENTALIZE' THE BAD ACTS AND OTHER TESTIMONY CONCERNING CO-DEFENDANT CAREY IRREPARABLY PREJUDICED APPELLANT SEELEY.

"V. THE TRIAL COURT ERRED IN ITS REFUSAL TO OFFER INSTRUCTION AS TO LESSER INCLUDED OFFENSES.

"VI. THE SENTENCE IMPOSED UPON APPELLANT SEELEY WAS EXCESSIVE, CONSTITUTES AN ABUSE OF JUDICIAL DISCRETION AND IS CRUEL AND UNUSUAL PUNISHMENT UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

"VII. APPELLANT SEELEY WAS DENIED DUE PROCESS OF LAW BE-

* Retired November 1, 1985.

** Retired November 30, 1985.

CAUSE OF THE INEFFECTIVE AS-SISTANCE OF TRIAL COUNSEL IN THE MATTER.

"VIII. THE EVIDENCE WAS INSUF-FICIENT FOR A REASONABLE JU-ROR TO FIND APPELLANT SEELEY GUILTY OF THE CRIME AS CHARGED BEYOND A REASONABLE DOUBT."

In response, the State of Wyoming re-states and reorders the issues in this way:

"I. WAS THE EVIDENCE SUFFI-CIENT FOR CONVICTION?

"II. DOES APPELLANT HAVE STANDING TO RAISE A RULE 404(b), WYOMING RULES OF EVIDENCE IS-SUE?

"III. DID MISJOINDER OCCUR?

"IV. IF MISJOINDER DID NOT OC-CUR, IS ABUSE OF DISCRETION THE STANDARD OF REVIEW?

"V. DID TRIAL COURT ABUSE ITS DISCRETION IN DENYING MOTION FOR SEVERANCE AND/OR MIS-TRIAL?

"VI. DID TRIAL COURT ABUSE ITS DISCRETION IN NOT GIVING LESS-ER INCLUDED OFFENSE INSTRUC-TIONS?

"VII. DID TRIAL COURT ABUSE ITS DISCRETION IN SENTENCING AP-PELLANT TO TEN (10) TO TWELVE (12) YEARS?

"VIII. WAS APPELLANT DENIED EFFECTIVE ASSISTANCE OF COUN-SEL?"

The material facts begin with the victim and a friend of hers whom she met at her place of employment encountering Seeley and Herman Carey at a club in Casper. During the next several hours, these four people drank alcoholic beverages, danced, rode in Seeley's pickup to another similar nightclub where they did not go in, and returned to the club where the victim and her friend had first encountered the two men. During their travels they had stopped at a liquor store to buy whiskey and mix. When the club closed, they left in their separate vehicles with the victim and her friend first going to obtain gas for the friend's pickup. After buying the gas, they were unable to get the pickup started and Seeley then pushed it with his pickup to the parking lot of the friend's apart-ment. The friend went into her apartment, but in a short while came back outside after having a falling out with her boy friend.

The four people then rode around for a short period of time in Seeley's pickup, and returned to the friend's apartment. Both the victim and the friend went inside, and Seeley and Carey waiting in Seeley's pick-up in the parking lot. The victim testified that she intended to stay overnight with her friend, but she did not feel comfortable there because of the situation between her friend and the friend's boy friend. Seeing Seeley and Carey in the parking lot, she decided to ask them to give her a ride to her sister's house where she was living.

Seeley and Carey agreed to give her a ride home, but during the journey, Seeley did not follow her instructions as to the route. Instead, they drove to a trailer park where Seeley had a mobile home. The victim testified that, although she was re-luctant to do so, she voluntarily accompa-nied the two men inside the mobile home, and after they had gone inside, she ob-served Carey locking the door. When she asked him what he was doing, he replied that they were going to have some fun. The victim testified that subsequently through the exercise of violence and force Carey perpetrated a sexual assault upon her. Those facts are detailed in the com-panion case of *Carey v. State*, Wyo., 715 P.2d 244 (1986). The victim testified that after being sexually assaulted by Carey, Seeley came into the room in the mobile home, lowered his trousers, and inquired if he could have some fun too. She said that Seeley then had sexual intercourse with her with some assistance from Carey. See-ley testified that he did not have any sexual contact with the victim, claiming that he had a personal aversion to having sexual intercourse with a white female who had been involved in sexual intercourse with a black man. According to the victim, Carey

then had sexual intercourse with her a second time. After that the two men did take her to her sister's home.

Additional facts will be discussed as necessary in disposing of the several issues raised in this appeal. At trial, both Seeley and Carey were convicted of sexual assault in the first degree in violation of § 6–4–302(a)(i), W.S.1977 (superseded by § 6–2–302, W.S.1977 (June 1983 Replacement)).[1] They had been charged in separate informations, but the cases were consolidated for trial. Seeley's appeal is taken from a judgment and sentence committing him to the Wyoming State Penitentiary for not less than ten nor more than twelve years.

Seeley's first four claims of error are all related to the evidence of prior bad acts on the part of his co-defendant, Carey. Addressing those in the chronological context of the proceedings, we first hold that the initial joinder of Seeley's case with Carey's case for trial was not improper. Rule 12, W.R.Cr.P., provides that:

"The court may order * * * informations * * * to be tried together if the offenses, and the defendants * * * could have been joined in a single information. * * *"

Joinder is provided for under Rule 11(b), W.R.Cr.P., in the following language:

"Two * * * defendants may be charged in the same * * * information if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. * * * *"

 Joinder, pursuant to Rule 11(b), W.R.Cr.P., and therefore consolidation pursuant to Rule 12, W.R.Cr.P., is proper in those instances in which the two defendants participated in the same act or transaction, or in the same series of acts or transactions. *Lee v. State*, Wyo., 653 P.2d 1388 (1982). A series of acts has been defined as those having a close connection in time, place, or occasion. *Dycus v. State*, Wyo., 529 P.2d 979 (1974); *Dobbins v. State*, Wyo., 483 P.2d 255 (1971). Rule 11(b) justifies the joinder of offenses which are of similar character, such as narcotic sales closely related in time, place and manner. *Dobbins v. State*, supra, 483 P.2d at 258, quoting *United States v. Rivera*, 348 F.2d 148, 150 (2nd Cir.1965). The record in this case discloses no objection by Seeley to the consolidation of his case for trial with Carey's, but even if he had objected, the initial joinder was proper pursuant to Rules 11(b) and 12, W.R.Cr.P. The fact that Seeley and Carey were charged with and convicted of two separate crimes does not foreclose consolidation in an instance such as this in which the crimes essentially constitute a single transaction or involve a related series of acts.

Seeley insists, however, that even if consolidation was proper, there did occur prejudicial error in refusing to grant him a mistrial or a severance of his case for trial when the evidence of the prior bad acts on the part of Carey was offered at the trial. In this instance, Seeley did not request a severance when the evidence of Carey's prior bad acts was offered, but he did ask for a mistrial. Precedent in Wyoming in which prejudicial joinder is discussed consists of cases which have involved motions on the part of the defendant to sever. *Ostrowski v. State*, Wyo., 665 P.2d 471, 484 (1983); *Lee v. State*, supra; *Tabor v. State*, Wyo., 616 P.2d 1282 (1980); *Linn v. State*, Wyo., 505 P.2d 1270, 1273, cert. denied 411 U.S. 983, 93 S.Ct. 2277, 36 L.Ed.2d 959, reh. denied 412 U.S. 944, 93 S.Ct. 2780, 37 L.Ed.2d 405 (1973); *Dobbins v. State*, supra, 483 P.2d at 259. Other courts have held that if a defendant does not make a motion to sever, he waives his right to severance. See, e.g., *State v. Longoria*, 123 Ariz.App. 7, 596 P.2d 1179 (1979). The United States Court of Appeals for the

---

**1.** Section 6–4–302(a)(i), W.S.1977, provided as follows:

"(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits a sexual assault in the first degree if:

"(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement; * * *"

Eighth Circuit has held that a waiver of a demand for separate trials may be found if the defendant did not renew a pretrial motion to sever at the close of the prosecution's case or at the close of all evidence. *United States v. Brim,* 630 F.2d 1307 (8th Cir.1980), cert. denied 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981).

According to Wright, Federal Practice and Procedure, § 213, p. 767 (1962), "a defendant who did not object to trial together in the district court cannot complain on appeal." The same text also notes, however, that "the case law is not in a satisfactory state concerning whether a motion for relief from prejudicial joinder is required or whether the court should act on its own motion." Wright, Federal Practice and Procedure, § 221, p. 769 (1982). See *Linn v. State,* supra; *Sims v. United States,* 132 U.S.App.D.C. 111, 405 F.2d 1381 (1968); *Schaffer v. United States,* 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921, reh. denied, 363 U.S. 858, 80 S.Ct. 1605, 4 L.Ed.2d 1739 (1960). Seely did complain about the unfairness of being tried with Carey in view of the evidence of Carey's prior bad acts. While we have not decided whether a trial judge would have a duty to sever the trial of cases pursuant to Rule 13, W.R. Cr.P., absent a motion for severance, we have said that "on motion for severance the burden is on the movant to present facts demonstrating that prejudice will result from a joint trial." *Dobbins v. State,* supra; *Tabor v. State,* supra.

■ The prejudice which Seeley points to in this instance is testimony to the effect that his co-defendant, Carey, had perpetrated a sexual assault on a female victim in Phoenix, Arizona, and had grabbed and thrown to the ground a young female in Gillette, Wyoming. The propriety of admitting this evidence against Carey has been disposed of in our decision in *Carey v. State,* Wyo., 715 P.2d 182 (1986). Seeley does not have standing to challenge the admission of evidence against Carey. Instead, he must demonstrate that the admission of that evidence was so prejudicial to him that a severance of the cases otherwise properly consolidated for trial was necessary. It is clear from this record that the jury could not have confused the two defendants or in any way concluded that Seeley had been involved in the prior bad acts. On cross-examination of the Phoenix victim, Seeley's attorney caused the victim to make it quite clear by her testimony that she did not know, nor had she ever had any prior contact with, Seeley. Her only complaint was against the conduct of Carey. With respect to the Wyoming incident in Gillette, the evidence was equally clear that the perpetrator in that instance was a black man. Seeley is white, and the jury could have had no difficulty in distinguishing the two. Furthermore, in closing argument counsel for both Carey and Seeley noted that any prior acts of Carey could not be attributed to Seeley and that obviously Seeley could not be convicted merely on the basis of his association with his co-defendant.

The evidence of Carey's bad acts, like the evidence in *Lee v. State,* supra, " * * * could be easily 'compartmentalized' by the jury" and therefore no prejudice to Seeley can be discerned. The damaging effect of this evidence as to Carey does not constitute prejudice, because Seeley is not entitled to severance simply because the evidence against a co-defendant is more damaging. *Lee v. State,* supra; *United States v. Jackson,* 549 F.2d 517, 40 A.L.R.Fed. 907 (8th Cir.1977), cert. denied 431 U.S. 968, 97 S.Ct. 2928, 53 L.Ed.2d 1064 (1977). Since the record does not demonstrate prejudice to Seeley arising out of the evidence of Carey's bad acts, even though a clear motion for severance had been made, the trial court would have been justified in refusing to grant such a motion. While we will say more about this later, it is significant that Seeley's position at trial was that he knew of intercourse between Carey and the victim, but that he had not engaged in any sexual activity with the victim.

■ Turning then to Seeley's complaint about the failure of the court to instruct the jury to "compartmentalize" the evidence of the bad acts and other testimony

concerning the co-defendant Carey, we note that no such instruction was requested at trial, and in fact the record indicates that counsel was fearful of emphasizing such testimony. Certainly cautionary instructions to avoid prejudice to a defendant have been approved. *Lee v. State*, supra; *Linn v. State*, supra; *Tabor v. State*, supra. The imposition on a trial court of an independent, continuing duty to give cautionary instructions without any request by a defendant would, however, deprive a defendant of any choice with respect to whether a limiting instruction should be given. As in this case, the defendant well may prefer that the evidence not be emphasized by the giving of such instruction. In an instance such as this, in which no prejudice has been demonstrated on the record, we find no error in the failure to give a limiting instruction.

Pursuing further his claims of instructional error, Seeley contends that the trial court improperly refused to give several offered instructions on lesser-included offenses. It is his position that instructions should have been given on sexual assault in the second degree, sexual assault in the third degree, attempted sexual assault, assault and battery and simple assault, which he contends are all lesser-included offenses within the crime of sexual assault in the first degree. He further argues that the evidence in this case warrants the giving of each of these lesser-included-offense instructions.

We again note that Seeley testified in this case that he had no sexual involvement with the victim. Of course, the victim's testimony was contrary to Seeley's, and some of the physical evidence and laboratory test evidence corroborated the victim's testimony. Succinctly, it was Seeley's position that he was not guilty of any criminal conduct. If the choice of the jury on the evidence before it is that of guilty of the offense charged or not guilty, a lesser-included-offense instruction is not required. Our cases hold that a lesser-included-offense instruction need not be giv-

en when it is clear from the evidence that the defendant is guilty either of the charged offense or not guilty. *Stamper v. State*, Wyo., 662 P.2d 82, 92 (1983); *State v. Selig*, Wyo., 635 P.2d 786 (1981), citing *United States v. Chapman*, 615 F.2d 1294 (10th Cir.1980), cert. denied 446 U.S. 967, 100 S.Ct. 2947, 64 L.Ed.2d 827 (1980); *Jones v. State*, Wyo., 580 P.2d 1150, 1152 (1978); *Richmond v. State*, Wyo., 554 P.2d 1217, 1232 (1976), reh. denied 558 P.2d 509 (1977); *Oldham v. State*, Wyo., 534 P.2d 107, 109 (1975); *State v. Gonzales*, 46 Wyo. 52, 23 P.2d 354 (1933); *Ross v. State*, 16 Wyo. 285, 93 P. 299, 303, reh. denied 94 P. 217 (1908). The evidence must fairly raise the question of guilt of the lesser-included offense. *State v. Selig*, supra; *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); *Oldham v. State*, supra.

Furthermore, in order for an offense to constitute a lesser-included offense, every element of the lesser offense must be included in the greater, that is one cannot commit the greater offense without also necessarily committing the lesser offense. *Balsley v. State*, Wyo., 668 P.2d 1324 (1983); *State v. Selig*, supra; *Evanson v. State*, Wyo., 546 P.2d 412 (1976). In this instance, the statute relating to sexual assault in the first degree under which Seeley was convicted provides:

"(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits a sexual assault in the first degree if:

"(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement; * * *" § 6–4–302(a)(i), W.S.1977 (superseded by § 6–2–302, W.S.1977 (June 1983 Replacement)).

A comparison of the statutory language proscribing sexual assault in the second degree and sexual assault in the third de-

gree[2] the manner of committing sexual assault in the second degree and sexual assault in the third degree not only is differentiated under the statutory language, but obviously those offenses can be committed by acts or conduct different from that proscribed by the statute forbidding sexual assault in the first degree. For example, sexual assault in the second degree (§ 6–4–303(a)(i)) can be committed without necessarily applying physical force or forcible confinement as required by § 6–4–302(a)(i). Because of this differentiation in the statutory language and the means of committing the offense, every element of the claimed lesser-included offenses of sexual assault in the second degree and sexual assault in the third degree is not necessarily encompassed within the commission of the greater offense of sexual assault in the first degree, and the lesser-included offense instructions are not required. *State v. Selig*, supra. With respect to the claimed lesser-included offense of sexual assault in the third degree, we also note that the evidence in this case justified a conclusion of penetration or nothing and an instruction relating to "sexual contact" would not be appropriate.

 Seeley also proposed an instruction on attempted sexual assault. This offense is proscribed by § 6–4–314, W.S.1977, in the following language:

"Whoever perpetrates an assault or assault and battery upon anyone with intent to commit a sexual assault in the first or second degree, shall, upon conviction, be imprisoned in the penitentiary not less than one (1) year nor more than five (5) years."

2. The pertinent portion of § 6–4–303, W.S.1977, proscribing sexual assault in the second degree, reads:

"Any actor who inflicts sexual penetration or sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:

 \* \* \* \* \* \*

"(ii) The actor causes submission of the victim by any means that would prevent resistance by a victim of ordinary resolution; \* \* "

Under prior forms of sexual assault statutes, assault and battery with intent to rape was a lesser-included offense of rape. *Martinez v. State*, Wyo., 511 P.2d 105 (1973). The court there relied upon Rule 32(c), W.R.Cr.P., which specifically approves of attempt instructions as well as lesser-included-offense instructions. An instruction on attempt as a lesser-included offense is still included in § 9.503 of the Wyoming Pattern Jury Instructions (Criminal). Conceding all this, under the test from *United States v. Chapman*, supra, adopted in *State v. Selig*, supra, the elements of attempted sexual assault are different from those of sexual assault in the first degree because of the requirement of a specific intent in the attempt statute. Sexual assault in the first degree is a general intent crime, and if the lesser offense has elements not included in the greater offense, no lesser-included offense instruction is warranted. *Balsley v. State*, supra; *Stamper v. State*, supra.

Seeley also asserts that an instruction should have been given with respect to simple assault and assault and battery under the theory that these are lesser-included offenses of the crime of sexual assault. Section 6–4–501, W.S.1977, defines the offense of assault as follows:

"Whoever, having the present ability to do so, unlawfully attempts to commit a violent injury on the person of another, is guilty of an assault and shall be fined in the sum not exceeding fifty dollars ($50.00)."

Section 6–4–502, W.S.1977, defines assault and battery in this language:

Section 6–4–304, W.S.1977, which proscribes sexual assault in the third degree, provides: "Any actor who subjects a victim to sexual contact under the circumstances of W.S. 6–63.2(a)(i) through (iv) [§ 6–4–302(a)(i) to (iv)] or W.S. 6–63.3(a)(i) through (vii)] [§ 6–4–303(a)(i) to (vii)] under circumstances not constituting sexual assault in either the first or second degree commits sexual assault in the third degree."

"Whoever, in a rude, insolent or angry manner, unlawfully touches another, is guilty of an assault and battery, and shall be fined not more than one hundred dollars ($100.00), to which may be added imprisonment in the county jail not exceeding six (6) months."

In light of our rule that a lesser-included offense instruction need be given only when the trial court determines that the evidence before the jury warrants the giving of such an instruction, the proffered instruction relating to assault and battery clearly was inappropriate. *Amin v. State*, Wyo., 695 P.2d 1021 (1985); *Amin v. State*, Wyo., 694 P.2d 119 (1985). The trial theory of Seeley was that he had no contact with the victim. Under those circumstances, there could be no assault and battery, and his testimony would foreclose any assault. The testimony of the victim was that of sexual assault, and under those circumstances there was no error in refusing to give the proffered instruction which was not consistent with either version of the facts testified to by these witnesses.

Seeley further argues that in this case the evidence was not sufficient to support a finding of guilt of sexual assault in the first degree. We reiterate that Seeley testified at trial that he did not touch the victim in any way. On appeal, he argues that even accepting the victim's testimony there was no evidence that he used force in achieving sexual penetration as the instruction given by the court requires. That instruction reads as follows:

"You are instructed that the necessary elements of sexual assault in the first degree are:

"1. The crime occurred within the County of Natrona, State of Wyoming, on or about the date of September 10th, 1982; and

"2. The Defendant inflicted sexual penetration on [the victim]; and

"3. The Defendant caused submission of [the victim] through the actual application of physical force which was reasonably calculated to cause submission of [the victim].

"If you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty of sexual assault in the first degree.

"If, on the other hand, you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty of sexual assault in the first degree."

The victim testified of force and violence on the part of Carey. She testified that then Seeley came into the room where she and Carey were, dropped his pants and asked if he could have some fun too. This was the same language attributed to Carey prior to the violent assault on his part. The victim said she attempted to avoid Seeley but that Carey held her leg while Seeley accomplished sexual intercourse with her.

The standard by which we review the sufficiency of the evidence is well established in Wyoming. We look at the evidence in a light most favorable to the prosecution, and then inquire whether a rational trier of fact could conclude that the defendant is guilty beyond a reasonable doubt. *Broom v. State*, Wyo., 695 P.2d 640 (1985).

Seeley's argument is that the evidence is insufficient to support this verdict of guilty because the evidence does not establish that he himself actually applied any physical force in accomplishing sexual intercourse. In earlier cases this court recognized a principle to the effect that forcible rape can be established without proof of violence to the victim and that the victim need not always resist the assault. The gravamen of sexual assault in the first degree is lack of consent to the sexual penetration or intrusion which can be shown by resistance. See *Morris v. State*, Wyo., 644 P.2d 170, 171 n. 3 (1982). Our cases also have recognized the proposition that lack of resistance by a victim does not necessarily demonstrate consensual intercourse. Resistance by a victim is not re-

quired when (1) resistance would be futile, (2) the victim is "overcome by superior strength," or (3) the victim is "paralyzed by fear." *Gonzales v. State*, Wyo., 516 P.2d 592, 594 (1973), quoting *People v. Smith*, 32 Ill.2d 88, 203 N.E.2d 879, 881 (1965); *Tryon v. State*, Wyo., 567 P.2d 290 (1977). In this latter case, we said at 567 P.2d 290, "a victim need not do more than her age, strength, surrounding facts, and all attending circumstances make it reasonable for her to do to manifest opposition." See *Evans v. State*, Wyo., 655 P.2d 1214 (1982).

The claimed deficiency in the testimony of the victim in this instance with respect to the use of force simply brings her within the theory of those prior cases that resistance would be futile, she already had been overcome by superior strength, and she was paralyzed by fear. Under such circumstances, a lesser degree of force on the part of the perpetrator is sufficient to justify the conviction. In this instance Seeley did not need to use any more force than was necessary under the circumstances. It was not necessary that he further abuse the victim by striking her. The force in arranging her body so that the sexual penetration could be achieved was sufficient under these circumstances. From the evidence a reasonable person could conclude that Seeley did exert some additional force. The jurors were entitled to believe that the victim had done all that was required to manifest her lack of consent to sexual intercourse with Seeley and that he did accomplish the offense charged by the actual application of physical force which was reasonably calculated to cause submission of the victim. The evidence was sufficient to support the verdict under the instruction which was given.

Seeley also argues that he should be afforded a new trial because of ineffective assistance of counsel at his trial in this case. In determining whether a defendant in a criminal case had effective assistance of counsel, this court has adopted the standard of reasonableness. *Munden v. State*, Wyo., 698 P.2d 621 (1985); *State ex rel. Hopkinson v. District Court, Teton County*, Wyo., 696 P.2d 54 (1985), cert. denied

—— U.S. ——, 106 S.Ct. 187, 88 L.Ed.2d 155 (1985); *Spilman v. State*, Wyo., 633 P.2d 183, 184 (1981); *Hoskovek v. State*, Wyo., 629 P.2d 1366, 1367 (1981). As we noted in *Munden v. State*, supra, this standard recently has been mandated by the Supreme Court of the United States. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied —— U.S. ——, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). In that case the Supreme Court of the United States announced a dual test. First, there must be applied a differential scrutiny to determine "reasonably affective assistance" within the "range of competence," and second there must be an affirmative showing of prejudice. The opinion of the Court cautioned that these are not mechanical rules, and the failure to show either deficient performance or sufficient prejudice will defeat the claim of ineffective assistance of counsel.

Our review of the record in this case persuades us that trial counsel was not unprepared, performed skillful cross-examination, and made sound strategic decisions. Trial strategy, even though unsuccessful, still can be the result of reasonable professional judgment. *Strickland v. Washington*, supra. The record demonstrates tactical decisions not to request a limiting instruction, not to delve into the past sexual behavior of the victim, and not to emphasize the victim's subsequent behavior. Counsel did call attention to asserted prejudice relating to the admission of evidence of prior bad acts of Carey, and the failure to make a specific motion for severance was not unreasonable in an instance in which the court would not have been required to grant it. An allegation that a failure to obtain a discovery order, particularly in view of the prosecutor's open-file policy, does not demonstrate ineffective assistance of counsel.

 To succeed with a claim of ineffective assistance of counsel, appellant must overcome a presumption of competency. *Spilman v. State*, supra; *Hoskovek v. State*, supra. "Seemingly this would in-

clude a showing of some injury which a reasonable attorney's conduct would have avoided." *Spilman v. State,* supra, 633 P.2d at 185. The record in this case reflects that the assistance which was rendered by Seeley's counsel was that which would be rendered by a reasonably competent attorney under the facts and circumstances of the case. See *Spilman v. State,* supra; *Hopkinson v. State,* Wyo., 632 P.2d 79 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *Hoskovek v. State,* supra; *Adger v. State,* Wyo., 584 P.2d 1056 (1978); *Johnson v. State,* Wyo., 562 P.2d 1294 (1977); *Ash v. State,* Wyo., 555 P.2d 221 (1976), reh. denied 560 P.2d 369 (1977), cert. denied 434 U.S. 842, 98 S.Ct. 139, 54 L.Ed.2d 106 (1977); *Galbraith v. State,* Wyo., 503 P.2d 1192 (1972).

 Lastly, we deal with the contention that Seeley received an excessive sentence. The legislatively mandated minimum and maximum sentence for a violation of § 6-4-302, W.S.1977, is found in § 6-4-306, W.S.1977, as follows:

"A person convicted of sexual assault * * * shall be punished as follows:

"(i) For sexual assault in the first degree, imprisonment for not less than five (5) nor more than fifty (50) years."

Seeley was sentenced to serve not less than ten nor more than twelve years in the Wyoming State Penitentiary. This sentence is within the statutory parameters, and we will not set aside a sentence on review absent an abuse of the sentencing discretion afforded to the trial court. *Ventling v. State,* Wyo., 676 P.2d 573 (1984); *Wright v. State,* Wyo., 670 P.2d 1090 (1983). We will not find an abuse of discretion unless the trial court exceeded the bounds of reason under the circumstances. *Ventling v. State,* supra; *Wright v. State,* supra; *Martinez v. State,* supra. In *Martinez v. State,* supra, we equated that conclusion with an error of law. No error of law can be found when a lawful sentence is imposed. In this instance, Seeley was sentenced to a term of imprisonment toward the lower end of the scale mandated by the legislature. Such a sentence does not con-

stitute an error of law and does not exceed the bounds of reason under the circumstances. Therefore, the sentence is to be approved on appeal.

The judgment and sentence of the district court is affirmed. Seeley has failed to demonstrate any error in the trial of his case.

CARDINE, Justice, concurring.

Had appellant Seeley objected to or resisted in any way the joinder of his case with that of Herman Carey for trial, I would join Justice Rose in his dissent. As I read the record, however, Seeley agreed to the joint trial and is not now in a position to claim error.

ROSE, Justice, dissenting.

I find inconceivable the majority holding that the record in this case fails to demonstrate prejudice to appellant Seeley arising out of the admission of evidence of co-defendant Carey's prior bad acts. This evidence had absolutely no connection to Seeley, could not have been introduced against him in a separate trial, and posed the substantial risk of conviction because of his association with one having a history of wrongdoing. Therefore, the admission of co-defendant Carey's prior offenses prejudiced appellant's right to a fair trial, and the court should have awarded the accused separate trials.

The Eighth Circuit Court of Appeals addressed this issue in *United States v. Engleman,* 648 F.2d 473 (8th Cir.1981). In that case, two defendants were tried jointly for engaging in a scheme to defraud insurance companies by insuring the life of an individual and then killing him. The prosecution presented evidence that one of the defendants had participated in an identical scheme 13 years earlier. The Court of Appeals reversed the other defendant's conviction, holding that the admission of evidence of his co-defendant's prior offense prejudiced his right to a fair trial, and severance was required.

The same reasoning applies in the case at bar. The State should be required to make its case against Seeley without resort to the fact of his association with one who had been tried previously for rape.

A second ground for reversal of Seeley's conviction is the failure of the trial court to instruct the jury on the lesser included offense of second degree sexual assault. Contrary to the majority holding, the statutory definition of second degree sexual assault, applicable in the instant case, constitutes a lesser offense necessarily included in the offense of first degree sexual assault, under our holdings in *Balsley v. State*, Wyo., 668 P.2d 1324 (1983), and *State v. Selig*, Wyo., 635 P.2d 786 (1981).

In deciding this question, it is necessary to examine the elements of first and second degree sexual assault since, under Balsley and Selig, an offense constitutes a lesser included offense if every element of the proposed lesser offense is also included in the charged, greater offense. Section 6–2–302(a)(i), W.S.1977, under which Seeley was convicted, provides:

"(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits a sexual assault in the first degree if:

"(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement; * * * "

Section 6–2–303, W.S.1977, defines sexual assault in the second degree:

"Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:

* * * * * *

"(ii) The actor causes submission of the victim by any means that would prevent resistance by a victim of ordinary resolution; * * * "

As the majority point out, the statutory definition of second degree sexual assault contains language differentiating the offense from first degree sexual assault. That is, second degree sexual assault expressly occurs only "under circumstances not constituting sexual assault in the first degree."

We held in *Jahnke v. State*, Wyo., 692 P.2d 911, 919 (1984), that one statute is not prevented from inclusion in another merely because the lesser crime contains terms which serve to negate some element of the greater offense. The question before us in Jahnke was whether manslaughter constitutes a lesser included offense of first degree murder since manslaughter, unlike murder, requires the commission of a homicide "upon a sudden heat of passion." We held that the phrase, "upon a sudden heat of passion," does not amount to a true element of manslaughter but simply describes the absence of the malice necessary for murder.

In similar fashion, the differentiating phrase in the statutory offense at issue in the case at bar does not create a distinct element, but, instead, emphasizes the enhanced requirements—physical force in this case—of first degree sexual assault. By focusing on the true elements of the defined crimes, it becomes clear that one who inflicts sexual intrusion and causes the submission of the victim through physical force (first degree sexual assault) also inflicts sexual intrusion and causes submission of the victim "by any means that would prevent resistance by a victim of ordinary resolution" (second degree sexual assault). Thus, second degree sexual assault is necessarily included within the greater offense of first degree sexual assault under *Balsley v. State*, supra.

Appellant Seeley requested an instruction on second degree sexual assault. The facts support the giving of such instruction since the element of the actor's application of physical force was in contest. The trial court refused to give the proffered instruction, and appellant is entitled to reversal of his conviction.