NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ERIC BRAN IBARRA, SR., *Appellant.*

No. 1 CA-CR 18-0767
FILED 6-4-2020

Appeal from the Superior Court in Yuma County
No. S1400CR201701000
The Honorable Stephen J. Rouff, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert J. Trebilcock
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Lawrence F. Winthrop joined.

_____

**B R O W N**, Judge:

¶1        Eric Bran Ibarra, Sr. appeals several convictions and sentences relating to a domestic violence incident.  For the following reasons, we affirm.

## BACKGROUND

¶2        On September 28, 2017, police responded to a domestic disturbance call.  When the responding police officer arrived at Ibarra's house, he initially heard voices coming from an attached garage and noticed the front door was slightly ajar.  When the officer knocked on the front door, an unidentified  man saw him and shut the door.  The officer continued to knock harder until V.P., Ibarras's wife, eventually opened the door.  V.P. had visible scratches on her face and neck area and appeared emotionally distraught.  Once V.P. agreed to step outside, she confirmed that Ibarra had been in the garage and there were weapons in the house.

¶3        V.P. was escorted away and the responding officer positioned his vehicle outside the front of the house and used a P.A. system to communicate with Ibarra.  Soon thereafter, additional officers arrived and secured the perimeter of the house.  Using the loudspeaker, officers repeatedly identified themselves, informed Ibarra he was under arrest, and asked that he come outside.  The volume of the loudspeaker was such that it could be heard down the street.  During this time, several officers talked to V.P. about what had occurred.

¶4        Several hours later, officers received V.P.'s consent to search the house and found a loaded gun in the master bedroom.  After clearing the house and garage, officers saw that Ibarra's dog was "favoring" a shed in the backyard.  They surrounded the structure, opened the door slightly, and saw Ibarra lying on the ground.  Officers told Ibarra to place his hands

outside the door. After officers repeated these commands several times, Ibarra submitted to arrest.

¶5        Ibarra told medical personnel that he hid in the shed for approximately five hours and claimed he "passed out several times." After he was arrested, Ibarra admitted to a detective that he argued with his wife and punched a wall "because he was pissed off." Ibarra, however, claimed the gun found in the master bedroom belonged to his son.

¶6        As relevant here, the State charged Ibarra with misconduct involving weapons, assault, criminal damage, and resisting arrest. Before trial, Ibarra stipulated he had committed five prior felony convictions (aggravated assault, shoplifting, failing to register as a sex offender, attempted failing to register as a sex offender, and theft) and was a prohibited possessor of a weapon for purposes of the trial.

¶7        At trial, Ibarra moved for judgment of acquittal pursuant to Arizona Rule of Criminal Procedure ("Rule") 20, asserting in part that merely hiding from the police does not constitute passive resistance under the resisting arrest statute. The court denied the motion, reasoning that "hiding can be fairly characterized as passive resistance to prevent or impede the officers from arresting him." The jury found Ibarra guilty of misconduct involving weapons and resisting arrest, but acquitted him of criminal damage. The court imposed a total of 10 years' imprisonment, and this timely appeal followed.

## DISCUSSION

### A.        Failure to Sever

¶8        Ibarra argues the superior court erred by failing to *sua sponte* sever the misconduct involving weapons charge from the other charges. Because Ibarra did not move for severance at the trial level, he has waived this argument on appeal. *See* Ariz. R. Crim. P. 13.4(c) ("The right to severance is waived if the defendant fails to timely file and renew a proper motion for severance."). Therefore, we review solely for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). To establish fundamental error, a defendant must show "(1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, or (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). If the defendant establishes prong one or two, he must show the error resulted in prejudice. *Id.*

**¶9**         Ibarra's assertion that the State invited error by joining the charges in the initial indictment fails.  Ibarra has not provided any legal authority supporting his proposition that the State must prove the absence of prejudice, nor has he shown that the superior court must sever charges on its own accord.  *See Cullum v. Cullum*, 215 Ariz. 352, 355, ¶ 14 n.5 (App. 2007) (noting that appellate courts "will not consider arguments posited without authority").  Contrary to Ibarra's contention, he bears the burden of proving fundamental, prejudicial error.  *See Escalante*, 245 Ariz. at 142, ¶ 21.

**¶10**         Rule 13.3(a)(2)–(3) permits joinder of separate charges when they are "based on the same conduct or are otherwise connected together in their commission" or they are "part of a common scheme or plan."  In the interest of judicial economy, joinder is viewed as the rule not the exception.  *State v. Van Winkle*, 186 Ariz. 336, 339 (1996).  Nevertheless, the superior court is authorized, but not required, to sever charges on its own accord "if necessary to promote a fair determination of any defendant's guilt or innocence of any offense."  Ariz. R. Crim. P. 13.4(a); *see also State v. Longoria*, 123 Ariz. 7, 10 (App. 1979).

**¶11**         In *State v. Burns*, our supreme court held that "[a]bsent an appropriate factual nexus, trial courts generally should not join a misconduct-involving-weapons charge, or any charge that requires evidence of a prior felony conviction, unless the parties have stipulated to a defendant's status as a prohibited possessor."  237 Ariz. 1, 15, ¶ 39 (2015).  The supreme court concluded, however, that any error in joining the charges in that case was harmless, finding there was overwhelming evidence of guilt, the State did not place any emphasis on the defendant's felon status, and the jury was instructed to consider each charge separately.  *Id.* at 15, ¶ 38.

**¶12**         The holding in *Burns* does not require reversal in this case. Ibarra did not move for severance and expressly stipulated to the admission of his prior felony convictions at trial.  Ibarra used his prior felony convictions to his benefit, arguing in closing argument that his criminal history caused him to fear and hide from police officers.  The record shows the State presented substantial evidence of Ibarra's guilt as to each charge and focused primarily on Ibarra's conduct on the date of the offenses rather than his criminal history.  Significantly, the superior court instructed the jury to consider each charge separately, and Ibarra was ultimately acquitted of the criminal damage charge.  *See State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006) (noting that juries are presumed to follow the court's instructions). Even if joinder of the charges constituted error, Ibarra has not shown that

the error resulted in prejudice or prevented him from receiving a fair trial. *See Escalante*, 245 Ariz. at 142, ¶ 21. We therefore conclude that the court's failure to *sua sponte* order severance did not amount to fundamental error.

## B. Denial of Rule 20 Motion

**¶13** Ibarra argues the superior court erred in denying his Rule 20 motion on the resisting arrest charge because the evidence that he hid from police officers was insufficient to prove passive resistance under A.R.S. § 13-2508(A)(3) and (C).

**¶14** We review de novo the denial of a Rule 20 motion. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). In doing so, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16 (citations omitted). We must determine whether "substantial evidence" supports the conviction, which means sufficient proof "to support a conclusion of defendant's guilt beyond a reasonable doubt." *Id.* "Both direct and circumstantial evidence should be considered in determining whether substantial evidence supports a conviction." *Id.* We also review de novo issues of statutory interpretation. *State v. Francis*, 243 Ariz. 434, 435, ¶ 6 (2018). Section 13-2508 states as follows:

> A. A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by:
>
> 1. Using or threatening to use physical force against the peace officer or another.
>
> 2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.
>
> 3. Engaging in passive resistance.
>
> B. Resisting arrest pursuant to subsection A, paragraph 1 or 2 of this section is a class 6 felony. Resisting arrest pursuant to subsection A, paragraph 3 of this section is a class 1 misdemeanor.

C. For the purposes of this section, "passive resistance" means a nonviolent physical act or failure to act that is intended to impede, hinder or delay the effecting of an arrest.

¶15    The evidence presented at trial showed that officers loudly announced their presence and intent to place Ibarra under arrest over an operative loudspeaker, the announcements persisted over a lengthy period of time, and Ibarra never complied. Officers found Ibarra hiding in the shed of his backyard. After several commands, Ibarra submitted to arrest and admitted that he hid for approximately five hours.

¶16    Based on the plain language of § 13-2508(A)(3) and (C), substantial evidence supports the jury's verdict that Ibarra committed resisting arrest by passive resistance. As noted, Ibarra took steps to hide from officers and refused to cooperate with their repeated commands; thus, he impeded, hindered, and delayed the arrest. *See* A.R.S. § 13-2508(A)(3), (C); *cf. State v. Jurden*, 239 Ariz. 526, 531, ¶¶ 22–23 (2016) (noting that "a person who simply does not open the door when officers attempt to arrest him commits passive resistance" under § 13-2508(C); it "does not require action directed against an officer, but serves to punish anyone who impedes the arrest, which is a function of the state's authority"); *State v. Matthews*, 245 Ariz. 281, 286, ¶ 16 (App. 2018) (characterizing potential offenses under subsections (A)(3) and (C) as "nonviolent physical acts," such as "run[ning] away without making physical contact" or going "limp to make it difficult for the officers to effect the arrest"). Even assuming Ibarra may have "passed out several times" while hiding from officers, his statements to medical personnel, combined with the loud, continuous nature of the officers' announcements were sufficient to show he intended to hide from officers for an extensive period of time.

¶17    We are not persuaded by Ibarra's suggestion that construing § 13-2508(A)(3) and (C) as prohibiting "hiding" would render it void for vagueness. Because we have concluded that his conduct here plainly falls within the scope of the statute, he lacks standing to challenge it for vagueness. *See Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."); *State v. Tocco*, 156 Ariz. 116, 119 (1988).

¶18    Even if Ibarra has standing, the statute provides reasonable notice as to what constitutes resisting arrest and what it means to engage in passive resistance. *See* A.R.S. § 13-2508(A)(3) and (C) *see also State v. Varela*, 120 Ariz. 596, 599 (1978) ("The basic rule in reviewing a statute for vagueness is to determine whether the offense is defined in terms that

people of average intelligence can understand."). Ibarra suggests the Arizona legislature could have been more specific by adding language specifically addressing "avoiding arrest," "evading arrest," or "hiding out." But we discern no meaningful difference between the legislature's terms and those Ibarra identifies as lending greater specificity.

**¶19** Ibarra poses several examples that may present a more difficult analysis of passive resistance than the conduct at issue here. The fact that a statute reaches broadly, or can be applied flexibly, does not make it impermissibly vague. *See State v. Coulter*, 236 Ariz. 270, 274–75, ¶ 9 (App. 2014) ("A statute is not vague simply because it is broad or that there may be difficulty in deciding whether certain marginal conduct falls within the scope of the statute."). Additionally, the statute provides specificity in what constitutes "passive resistance" not just by defining the phrase, but by also requiring proof of intent. *See* A.R.S. § 13-2508(A); *Gonzalez v. Carhart*, 550 U.S. 124, 149 (2007) ("[S]cienter requirements alleviate vagueness concerns.").

**¶20** Finally, Ibarra's reliance on *State v. Womack*, 174 Ariz. 108 (App. 1992), is misplaced. In that case, we concluded the defendant's mere flight, unaccompanied by physical contact with the officers, did not constitute resisting arrest under A.R.S. § 13-2508(A)(2). *Id.* at 111–14. *Womack*, however, was decided before the legislature amended A.R.S. § 13-2508 to include passive resistance under subsection (A)(3) and dealt with subsection (A)(2), which requires proof the defendant created "a substantial risk of causing physical injury." *Id.* at 113. Thus, *Womack* does not support Ibarra's position. Accordingly, the superior court did not err in denying Ibarra's Rule 20 motion because a rational trier of fact could have found the essential elements of resisting arrest by passive resistance beyond a reasonable doubt.

## CONCLUSION

**¶21** We affirm Ibarra's convictions and sentences.

